## VAN CAUWENBERGHE *v.* BIARD

No. 87–336.   Argued March 21, 1988—Decided June 13, 1988

MARSHALL, J., delivered the opinion for a unanimous Court.

*John G. Kester* argued the cause and filed briefs for petitioner.

*Thomas C. Walsh* argued the cause for respondent. With him on the brief were *Michael G. Biggers* and *Percy Anderson.*

JUSTICE MARSHALL delivered the opinion of the Court.

This case requires us to determine whether two types of orders by a district court are immediately appealable under

28 U. S. C. § 1291: first, an order denying a motion to dismiss based on an extradited person's claim that he is immune from civil service of process; and second, an order denying a motion to dismiss on the ground of *forum non conveniens*.

## I

This case arises from a dispute over a loan. Petitioner, a real estate broker in Brussels, encouraged respondent, also a Brussels resident, to meet with one Alan Blair in the United States to discuss a real estate investment. Blair is a resident of Los Angeles. Following a business trip to Atlanta, respondent traveled to Los Angeles where he met petitioner, Blair, and others, to talk about the investment. Blair described a real estate partnership called Three B Investment Associates, which was renovating a townhouse complex outside Kansas City known as Concorde Bridge Townhouses. At petitioner's urging, respondent agreed to lend the partnership $1 million for three years at 20% per annum interest, secured by a mortgage on the Concorde Bridge complex. At the time, the partnership did not have title to the Concorde Bridge complex, but it held a contract to purchase the complex and had made a substantial deposit.

The partnership, after making some scheduled payments, eventually defaulted on its promissory note to respondent. The mortgage proved worthless because the partnership had not acquired title to the Concorde Bridge complex. Respondent retained American counsel, claiming that he had been misled into believing that the partnership held title to the Concorde Bridge Townhouses at the time of the loan. Soon thereafter, United States prosecutors became involved in the controversy. In October 1984, petitioner, Blair, and another American were indicted in the Central District of California on charges of wire fraud and causing the interstate transportation of a victim of fraud. The indictment charged that the three defendants had fraudulently induced respondent to lend them $1 million by falsely representing that they

owned the Concorde Bridge complex through the real estate partnership.

While on a trip to Geneva, petitioner was arrested pursuant to a request from the United States Department of Justice under the applicable extradition treaty with Switzerland. See Treaty between the United States and Switzerland for the Extradition of Criminals, May 14, 1900, 31 Stat. 1928, T. S. No. 354 (1900). Petitioner was extradited and delivered to Los Angeles by United States Marshals after legal proceedings in Swiss courts. Following a jury trial, petitioner was found guilty on one count of wire fraud and one count of causing the interstate transportation of a victim of fraud. On January 22, 1986, petitioner was sentenced to a prison term of one year and one day, which was satisfied by the time he already had spent in pretrial confinement. The trial court also ordered petitioner to pay respondent restitution of $34,501.26 and placed him on probation. Petitioner was ordered not to leave the United States until the restitution order was satisfied.[1] The conviction was affirmed by the Court of Appeals. *United States* v. *Van Cauwenberghe*, 827 F. 2d 424 (CA9 1987), cert. denied, 484 U. S. 1042 (1988).

On November 12, 1985, one week before petitioner's criminal trial commenced, respondent filed a civil suit against petitioner, Blair, and others in the District Court for the Central District of California. The complaint asserted a civil Racketeer Influenced and Corrupt Organizations (RICO) claim, a common-law claim of fraud, and other pendent state-law claims arising out of the defaulted loan. On February 5, 1986, about two weeks after his sentencing, petitioner was served with the summons and complaint as he was arriving at the office of his probation officer to keep a scheduled appointment. Petitioner moved to dismiss the suit on two separate grounds. First, he argued that because his presence in the

---

[1] Petitioner's probation order has since been modified and he has returned to Belgium after having provided security for the payment of the restitution.

United States was a result of extradition, he was immune from civil process. Second, petitioner argued that the complaint should be dismissed on the ground of *forum non conveniens*. The District Court summarily denied both motions. App. 221, *Biard* v. *Blair*, No. CV 85–7378 JSL (Nov. 17, 1986). The Court of Appeals dismissed petitioner's appeal for lack of jurisdiction in a one-line order, citing this Court's decisions in *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541 (1949), and *Mitchell* v. *Forsyth*, 472 U. S. 511 (1985). App. 234, No. 86–6735 (CA9, July 7, 1987).[2] We granted certiorari, 484 U. S. 942 (1987), and we now affirm.

## II

The courts of appeals have jurisdiction under 28 U. S. C. § 1291 of appeals "from all final decisions of the district courts . . . except where a direct review may be had in the Supreme Court." A party generally may not take an appeal under § 1291 until there has been a decision by the district court that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[3] *Catlin*

---

[2] Although petitioner did not make a general appearance, the District Court proceeded with the case after the appeal was filed with the Court of Appeals. The District Court granted respondent's motion for summary judgment and entered judgment for respondent on the RICO claim for treble damages of $1.8 million, plus attorney's fees of $75,000. *Biard* v. *Blair*, No. CV 85–7378 JSL (JRx) (Apr. 6, 1987), App. to Brief for Respondents, A–3.

[3] The purposes behind the rule that a party must ordinarily raise all claims of error in a single appeal following final judgment are by now well known:

"[The rule] emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of trial. Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system. In addition, the rule is in accordance with the sensible policy of 'avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a

v. *United States*, 324 U. S. 229, 233 (1945). In *Cohen* v. *Beneficial Industrial Loan Corp.*, *supra*, however, we recognized a "small class" of decisions that are immediately appealable under § 1291 even though the decision has not terminated the proceedings in the district court. 337 U. S., at 546. The Court stated that a decision is final and appealable for purposes of § 1291 if it "finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Ibid.* The Court refined the "collateral order" doctrine of *Cohen* in *Coopers & Lybrand* v. *Livesay*, 437 U. S. 463 (1978). In *Coopers & Lybrand*, the Court held that to come within the collateral order doctrine of *Cohen*, the order must satisfy each of three conditions: it must (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) "be effectively unreviewable on appeal from a final judgment." 437 U. S., at 468 (footnote omitted).

As petitioner acknowledges, the order of the District Court denying petitioner's motion to dismiss on grounds of immunity from civil process or *forum non conveniens* did not end the litigation on the merits. Therefore, the order is appealable as to either ground only if the three requirements set out in *Coopers & Lybrand* are met.

## A

In asserting the appealability of his claim of immunity from civil process, petitioner principally relies on this Court's decision in *Mitchell* v. *Forsyth*, *supra*. The Court held in *Mitchell* that the denial of a claim of qualified immunity by the Attorney General was immediately appealable under the

---

litigation may give rise, from its initiation to entry of judgment.'" *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U. S. 368, 374 (1981), quoting *Cobbledick* v. *United States*, 309 U. S. 323, 325 (1940).

collateral order doctrine. The crucial issue in *Mitchell* was whether the order was effectively unreviewable on appeal from final judgment. See *id.*, at 525. In holding that such an order was effectively unreviewable, the Court reasoned that an "essential attribute" of qualified immunity is "an entitlement not to stand trial under certain circumstances," and thus is "an *immunity from suit* rather than a mere defense to liability." *Id.*, at 525, 526. As with absolute immunity, the Court concluded, "[the entitlement] is effectively lost if a case is erroneously permitted to go to trial." *Id.*, at 526.

Petitioner argues that under *United States* v. *Rauscher*, 119 U. S. 407 (1886), as well as under federal extradition statutes and the extradition treaty between the United States and Switzerland, he is immune from civil service of process while his presence in the United States is compelled by extradition for criminal charges. Petitioner further contends that his immunity under *Rauscher*, like the immunity in *Mitchell*, entails the right not to stand trial, which cannot be effectively vindicated on appeal from final judgment. In *Rauscher*, the Court stated the general "principle of specialty" in federal extradition law:

> "[A] person who has been brought within the jurisdiction of the court by virtue of proceedings under an extradition treaty, can only be tried for one of the offences described in that treaty, and for the offence with which he is charged in the proceedings for his extradition, until a reasonable time and opportunity have been given him, after his release or trial upon such charge, to return to the country from whose asylum he had been forcibly taken under those proceedings." 119 U. S., at 430.

Petitioner argues that the principle of specialty requires not merely that an extradited person be immune from criminal prosecutions other than the offenses for which he was extradited, but that he be generally "free from any judicial interference," including civil suit. Brief for Petitioner 18.

The issue on which we granted certiorari, however, and on which the Court of Appeals based its decision, is not whether petitioner's underlying claim of immunity is meritorious, but whether the denial of petitioner's motion to dismiss on grounds of immunity from service of process is immediately appealable. For purposes of determining appealability, therefore, we will assume, but do not decide, that petitioner has presented a substantial claim of immunity from civil service of process that warrants appellate consideration. Making this assumption, we conclude that petitioner's claim of immunity from service is effectively reviewable on appeal from final judgment, and thus is not an immediately appealable collateral order under *Cohen* and *Coopers & Lybrand*.

The critical question, following *Mitchell*, is whether "the essence" of the claimed right is a right not to stand trial. *Mitchell*, 472 U. S., at 525. This question is difficult because in some sense, all litigants who have a meritorious pretrial claim for dismissal can reasonably claim a right not to stand trial. But the final-judgment rule requires that except in certain narrow circumstances in which the right would be "irretrievably lost" absent an immediate appeal, *Richardson-Merrell Inc.* v. *Koller*, 472 U. S. 424, 431 (1985), litigants must abide by the district court's judgments, and suffer the concomitant burden of a trial, until the end of proceedings before gaining appellate review. As the Court stated in *United States* v. *MacDonald*, 435 U. S. 850, 860, n. 7 (1978):

> "Admittedly, there is value — to all but the most unusual litigant — in triumphing before trial, rather than after it, regardless of the substance of the winning claim. But this truism is not to be confused with the quite distinct proposition that certain claims (because of the substance of the rights entailed, rather than the advantage to a litigant in winning his claim sooner) should be resolved before trial."

Because of the important interests furthered by the final-judgment rule, see n. 3, *supra*, and the ease with which cer-

tain pretrial claims for dismissal may be alleged to entail the right not to stand trial, we should examine the nature of the right asserted with special care to determine whether an essential aspect of the claim is the right to be free of the burdens of a trial.

We believe that even if the principle of specialty shields petitioner from service of process in a civil suit while he is detained in the United States following his extradition and conviction—an issue on which we express no opinion—the right not to be burdened with a civil trial itself is not an essential aspect of this protection. First, the principle of specialty fundamentally bears on treaty obligations between states; the principle operates to ensure that the receiving state does not abuse the extradition processes of the extraditing state. See *Rauscher, supra,* at 419–420; 1 M. Bassiouni, International Extradition: United States Law and Practice, ch. 7, § 7, pp. 360–361 (2d ed. 1987). The conduct of a civil trial, prior to any attempt to subject the defendant to a binding judgment of the court, does not significantly implicate the receiving state's obligation under the doctrine. Unlike a criminal prosecution, in which the coercive power of the state is immediately brought to bear, the state's involvement in the conduct of a private civil suit is minimal. The state's role is simply to provide a forum for the resolution of a private dispute. In the absence of an explicit agreement obligating the United States to protect the extradited person from the burdens of a civil suit, we believe that there is little potential that the extraditing state, in this case Switzerland, will view the mere conduct of a private civil trial as a breach of an obligation by the United States not to abuse the extradition process.[4]

---

[4] Petitioner does not dispute that neither the extradition treaty with Switzerland, Treaty between the United States and Switzerland for the Extradition of Criminals, May 14, 1900, 31 Stat. 1928, T. S. No. 354 (1900), nor the relevant federal statutes governing extradition matters, see 18 U. S. C. §§ 3186, 3192, deal explicitly with the protection of an extradited person from civil suit.

In addition, to the extent that the principle of specialty protects an extradited person from the exercise of coercive power by the receiving state on matters not anticipated by the extradition, the defense of a civil suit does not significantly restrict a defendant's liberty.  Service of process merely requires that a defendant appear through an attorney and file an answer to the complaint to avoid default.  There is no possibility that the defendant will be subject to pretrial detention or be required to post bail.  The defendant is not even compelled to be present at trial.  We therefore conclude that a right not to stand trial in a civil suit is not an essential aspect of a claim of immunity under the principle of specialty.

Given that the principle of specialty provides no independent support for petitioner's claim that he has a right not to stand trial, the question becomes whether such a right is entailed in the mere assertion that the district court lacks personal jurisdiction because of immunity from service of process.  Cf. *Rauscher*, 119 U. S., at 433 ("[Court] did not have jurisdiction of the person at that time").[5]  In the context of due process restrictions on the exercise of personal jurisdiction, this Court has recognized that the individual interest protected is in "not being subject to the binding judgments of a forum with which [the defendant] has established no meaningful 'contacts, ties, or relations.'"  *Burger King Corp.* v. *Rudzewicz*, 471 U. S. 462, 471–472 (1985), quoting *International Shoe Co.* v. *Washington*, 326 U. S. 310, 319 (1945).  Similarly, we believe petitioner's challenge to the District Court's exercise of personal jurisdiction because he is im-

---

[5] As petitioner acknowledges, if he had been properly served in Belgium or Switzerland prior to his extradition, or had been served while in the United States on other business, then he could rightly have been compelled to defend respondent's civil suit.  Petitioner thus does not contend that he never can be haled into court on the same complaint in the same forum, but argues that he is immune from service of process at this time and in this manner, "by taking advantage of an extraditee's forced presence in this country."  See Reply Brief for Petitioner 5.

mune from civil process should be characterized as the right not to be subject to a binding judgment of the court. Because the right not to be subject to a binding judgment may be effectively vindicated following final judgment, we have held that the denial of a claim of lack of jurisdiction is not an immediately appealable collateral order. See *Catlin* v. *United States*, 324 U. S., at 236. The Court of Appeals was therefore correct to conclude that the District Court's denial of petitioner's motion to dismiss on the ground of immunity from civil process is not immediately appealable.

## B

Petitioner also argues that the District Court's order denying the motion to dismiss on the ground of *forum non conveniens* falls within the collateral order doctrine of *Cohen* and thus is immediately appealable under § 1291. We conclude, however, as have the majority of the Courts of Appeals that have considered the issue,[6] that the question of the convenience of the forum is not "completely separate from the merits of the action," *Coopers & Lybrand*, 437 U. S., at 468, and thus is not immediately appealable as of right.

The requirement that the order be completely separate from the merits is "a distillation of the principle that there should not be piecemeal review of 'steps towards final judgment in which they will merge.'" *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U. S. 1, 12, n. 13 (1983), quoting *Cohen*, 337 U. S., at 546. Allowing ap-

---

[6] See *Carlenstolpe* v. *Merck & Co.*, 819 F. 2d 33, 36 (CA2 1987) ("[T]he determining factors in a forum non conveniens motion are 'enmeshed' in the underlying cause of action"); *Partrederiet Treasure Saga* v. *Joy Manufacturing Co.*, 804 F. 2d 308, 310 (CA5 1986) (same); *Rosenstein* v. *Merrell Dow Pharmaceuticals*, 769 F. 2d 352, 354 (CA6 1985) (same); *Coastal Steel Corp.* v. *Tilghman Wheelabrator Ltd.*, 709 F. 2d 190, 195 (CA3 1983) (same). Only one Circuit has held that the denial of a motion to dismiss on the ground of *forum non conveniens* is immediately appealable under 28 U. S. C. § 1291. See *Hodson* v. *A. H. Robins Co.*, 715 F. 2d 142, 145, n. 2 (CA4 1983).

peals from interlocutory orders that involve considerations enmeshed in the merits of the dispute would waste judicial resources by requiring repetitive appellate review of substantive questions in the case. In *Gulf Oil Corp.* v. *Gilbert*, 330 U. S. 501, 508 (1947), the Court described various "[i]mportant considerations" for district courts to balance in deciding whether a particular forum is so inconvenient for the defendant as to warrant dismissal. We believe these considerations make clear that in assessing a *forum non conveniens* motion, the district court generally becomes entangled in the merits of the underlying dispute.

The Court in *Gulf Oil* stated that district courts must look into "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling . . . witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Ibid.* To examine "the relative ease of access to sources of proof," and the availability of witnesses, the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action. Public interest factors relevant to a *forum non conveniens* determination—such as the "local interest in having localized controversies decided at home" and the interest in having "the trial of a diversity case in a forum that is at home with the state law that must govern the case," *id.*, at 509—also thrust the court into the merits of the underlying dispute. To evaluate these factors, the court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to the plaintiff's chosen forum. Cf. *Piper Aircraft Co.* v. *Reyno*, 454 U. S. 235, 259–260 (1981).

This list of considerations to be balanced is by no means exhaustive, and some factors may not be relevant in the context

of a particular case. Moreover, the district court's inquiry does not necessarily require extensive investigation, and may be resolved on affidavits presented by the parties. See *id.*, at 258–259. As we previously have recognized, the district court is accorded substantial flexibility in evaluating a *forum non conveniens* motion, *id.*, at 249, and "[e]ach case turns on its facts." *Williams* v. *Green Bay & Western R. Co.*, 326 U. S. 549, 557 (1946). It is thus undoubtedly true that in certain cases, the *forum non conveniens* determination will not require significant inquiry into the facts and legal issues presented by a case, and an immediate appeal might result in substantial savings of time and expense for both the litigants and the courts. In fashioning a rule of appealability under § 1291, however, we look to categories of cases, not to particular injustices. See *Carroll* v. *United States*, 354 U. S. 394, 405 (1957) ("Appeal rights cannot depend on the facts of a particular case"); *United States* v. *MacDonald*, 435 U. S., at 857–858, n. 6.[7] We believe that in the main, the issues that arise in *forum non conveniens* determinations will substantially overlap factual and legal issues of the underlying dispute, making such determinations unsuited for immediate appeal as of right under § 1291.

Our conclusion that the denial of a motion to dismiss on the ground of *forum non conveniens* is not appealable under § 1291 is fortified by the availability of interlocutory review pursuant to 28 U. S.C § 1292(b). Under § 1292(b), a district

---

[7] Petitioner argues that the *forum non conveniens* determination in this case is especially worthy of immediate review because the District Court disposed of the motion summarily instead of making factual findings and articulating reasons for its decision. Petitioner essentially claims that the District Court's failure to explain its determination in this case is a clear abuse of discretion, and such clear errors should be promptly appealable. For the reasons stated in the text, we refuse to fashion an exception from the general rule of nonappealibility for what petitioner describes as "facially apparent reversible error," Brief for Petitioner 35. Cf. *United States* v. *MacDonald*, 435 U. S., at 857–858, n. 6; *Coopers & Lybrand* v. *Livesay*, 437 U. S. 463, 476 (1978).

court may certify a nonfinal order for interlocutory review when the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation."  A court of appeals may then, in its discretion, determine whether the order warrants prompt review.  See *Coopers & Lybrand*, 437 U. S., at 474–475.  Section 1292(b) therefore provides an avenue for review of *forum non conveniens* determinations in appropriate cases.

## III

We hold that neither an order denying a motion to dismiss on grounds that an extradited person is immune from civil process, nor an order denying a motion to dismiss on the ground of *forum non conveniens*, is a collateral order subject to appeal as a final judgment under 28 U. S. C. § 1291.  The Court of Appeals therefore lacked jurisdiction to consider petitioner's appeal.  Accordingly, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*