**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JOHN R. STEARNS, an individual;
WALNUT REALTY, INC., a
Colorado Corporation,

      Plaintiffs-Counter-
      Defendants-Appellees,

  v.

MICHAEL T. MCGUIRE,

      Defendant-Counter-
      Claimant-Appellant.

No. 04-1459
(D.C. No. 02-RB-1912 (OES))
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **TYMKOVICH, PORFILIO**, and **BALDOCK**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This is an appeal from a summary judgment order in a real estate case founded on diversity jurisdiction. Appellant contends that the district court erred in dismissing his breach of fiduciary duty counterclaim and affirmative defense and his estoppel affirmative defense. We affirm.

## BACKGROUND

John R. Stearns is a real estate broker at Walnut Realty, Inc. (collectively, Stearns) in Boulder, Colorado. Michael T. McGuire is a California criminal defense attorney who has a real estate license. In October 2001, Stearns was asked by Candace and Grove Stafford to locate an investment property in the price range of $1 million to $1.6 million. Stearns had previously represented the Staffords in five real estate transactions and was a long-time friend.

In December 2001, Stearns contacted McGuire after learning that McGuire owned an apartment building in Boulder. Stearns stated that he "may have some buyers for" the building. Aplt. App. at 89. McGuire had not been to Boulder in fifteen years and was unaware of the building's condition or the Boulder real estate market.

On January 16, 2002, Stearns faxed McGuire a proposed "CONTRACT TO BUY AND SELL REAL ESTATE" signed by Grove Stafford that recited a $1.55 million purchase price. *Id.* at 120. At page six of the document, following Stafford's signature and the words "END OF CONTRACT," there is a "BROKER

-2-

ACKNOWLEDGMENTS" section signed by Stearns that includes boxes checked to designate brokerage relationships:

> Selling Company Brokerage Relationship.    The Selling Company and its licensees have been engaged in this transaction as    ☐ Buyer Agent ☐[1] Seller Agent/Subagent   ▣ Dual Agent   ☐ Transaction-Broker.
> Listing Company Brokerage Relationship.    The Listing Company and its licensees have been engaged in this transaction as    ▣ Seller Agent ☐ Dual Agent   ☐ Transaction-Broker.

*Id.* at 125-26. Stearns also prepared an "EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT" that states, "The parties agree that Seller irrevocably engages [Walnut Realty] as Seller's exclusive agent," *id.* at 128, to "promote the interests of Seller with the utmost good faith, loyalty and fidelity," *id*. at 129. But Stearns neither signed the listing contract nor sent it to McGuire.

In response to a "counterproposal" submitted by McGuire, *id.* at 99, Stearns faxed McGuire on January 29, 2002, another proposed "CONTRACT TO BUY AND SELL REAL ESTATE," *id*. at 138. This document increased the purchase price to $1.65 million and included an "ADDITIONAL PROVISIONS" section that gave Stearns a four percent commission and stated that the "[Staffords] understand[ ] that they are purchasing the property 'AS IS' and that the Seller and Seller's Agent make no representations whatsoever as to the condition of the structure." *Id.* at 143. McGuire signed the contract on January 30, 2002. A

---

1    It is unclear whether the "Seller Agent/Subagent" box is checked.

"BROKER ACKNOWLEDGMENTS" section signed by Stearns follows

McGuire's and the Staffords' signatures and the words "END OF CONTRACT."

This time, only the "Seller Agent/Subagent" box was checked:

> <u>Selling Company Brokerage Relationship.</u>     The Selling Company and its licensees have been engaged in this transaction as      ☐ Buyer Agent ▣ Seller Agent/Subagent   ☐ Dual Agent   ☐ Transaction-Broker.
> <u>Listing Company Brokerage Relationship.</u>     The Listing Company and its licensees have been engaged in this transaction as      ☐ Seller Agent ☐ Dual Agent   ☐ Transaction-Broker.

*Id.* at 144.  Contemporaneous to the contract's execution, Stearns and Stafford

also executed a "BROKERAGE RELATIONSHIPS DISCLOSURE" form stating

that Walnut Realty was "working with you [the Staffords] as a seller's agent on

properties we have listed and as a transaction-broker on properties listed with

other companies."  *Id.* at 135.

According to McGuire, in the months leading up to closing, he "began to

realize that Stearns had failed to disclose any pertinent information about the

Boulder market or the property . . . [and] that he had been 'lifelong friends' with

Candace Stafford."  *Id.* at 106-07.  McGuire informed the Staffords of his

realization and insisted that they pay him for expenses he had incurred.  They

refused, "and the closing did not occur."  *Id.* at 107. [2]

---

[2]     McGuire eventually conveyed the property to the Staffords after they sued him for specific performance.

Stearns sued McGuire for his commission, pleading breach of contract, misrepresentation, and unjust enrichment. McGuire answered, asserted a variety of affirmative defenses, including breach of fiduciary duty and estoppel, and also counterclaimed for breach of fiduciary duty, negligence, negligent misrepresentation, and fraud. During discovery, Stearns and McGuire deposed each other. Stearns testified that he mistakenly checked the "Dual Agent" and "Seller Agent" boxes on the proposed contract and the "Seller Agent/Subagent" box on the accepted contract. *Id.* at 93, 100. McGuire testified that he "probably" did not read the contract before signing it because he "thought [it] was a bunch of hogwash," *id.* at 47, or a "hoax," *id.* at 48, that he did not notice the "Seller's Agent/Subagent" box was checked, and that he never authorized Stearns to take any action on his behalf, *id.* at 45-46. McGuire further testified that he never asked Stearns for a listing agreement.

In July 2004, the district court entered a partial summary judgment, ruling that Stearns was a transaction-broker, rather than a seller's agent, because there was no written agency agreement. And as a transaction broker, Stearns owed no fiduciary duty to McGuire. The district court further determined that Stearns was not estopped from relying on the absence of a written agency agreement. App. at 199. Accordingly, the district court dismissed McGuire's breach of fiduciary duty counterclaim and affirmative defense and his estoppel affirmative defense.

In September 2004, the district court entered an order, based on a stipulation reached by the parties, dismissing with prejudice Stearns' claims of misrepresentation and unjust enrichment and McGuire's claims of negligence, negligent misrepresentation, and fraud. But the order also provides that McGuire "reserves the right to pursue his breach of fiduciary claim and estoppel and breach of fiduciary duty affirmative defenses, and only his breach of fiduciary claim, against [Stearns]." *Id.* at 202-03. The order further awards Stearns damages for breach of contract.

In October 2004, the district court entered judgment "in accordance with the [September] Order," *id.* at 209, such that it repeated McGuire's reservation of "the right to pursue his breach of fiduciary claim and estoppel and breach of fiduciary duty affirmative defenses," *id.* at 210. But the judgment then goes on "in accordance with the [July] Order" to dismiss with prejudice McGuire's breach of fiduciary duty counterclaim and breach of fiduciary duty and estoppel affirmative defenses, *id.* The judgment concludes with "This Order shall be deemed final for purposes of Fed.R.Civ.P. 54(b)." *Id.*

McGuire appealed.

# DISCUSSION

## I. Appellate Jurisdiction

Before proceeding to the merits of this appeal, we must first address our jurisdiction. Under 28 U.S.C. § 1291, this court exercises appellate jurisdiction over the "final decisions of the district courts" that are not subject to direct review by the Supreme Court. "A party generally may not take an appeal under § 1291 until there has been a decision by the district court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521 (1988) (quotation marks omitted). Any decision that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all of the parties" is ordinarily not appealable without "an express determination that there is no just reason for delay and . . . an express direction for the entry of judgment." Fed. R. Civ. P. 54(b).

The finality of the district court judgment on appeal here is obscured by two things. First, the judgment both declares McGuire's right to pursue his breach of fiduciary claim and dismisses that claim with prejudice. Second, the judgment refers to Rule 54(b), thereby suggesting a lack of finality. Nevertheless, we are satisfied that this court has jurisdiction. McGuire's reservation of a right to pursue a breach of fiduciary duty claim appears to be a precautionary measure employed in the event that this court determines that Stearns owed McGuire a

-7-

fiduciary duty, reverses the judgment, and remands for the district court to determine whether Stearns breached that duty. Our perception of the reserved right is supported by the fact that the September order holds Stearns' commission in escrow during the appeal and releases it to him only if the judgment is affirmed. In cases such as this, when an affirmance will terminate the litigation in its entirety, appellate jurisdiction is present. *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1288 (10th Cir. 2001). The reference to Rule 54(b) appears to be have been inadvertent. [3]

## II. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review "a grant of summary judgment de novo with an examination of the record and all reasonable inferences that might be drawn from it in the light most favorable to

---

[3] The existence of a final judgment renders Rule 54(b) certification unnecessary. *See* Fed. R. Civ. P. 54(b). And in those cases falling within the rule's ambit, certification fails if the district court does not "express[ly] determine that there is no just reason for delay" and "express[ly] direct[ ] . . . the entry of judgment," *id.*; *see, e.g.*, *Stockman's Water Co., LLC v. Vaca Partners, L.P.*, 425 F.3d 1263, 1266 (10th Cir. 2005).

the non-moving party." *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005).

### III. Breach of Fiduciary Duty

A transaction-broker "assists one or more parties throughout a contemplated real estate transaction with communication, interposition, advisement, negotiation, contract terms, and the closing of such real estate transaction without being an agent or advocate for the interests of any party to such transaction." Colo. Rev. Stat. § 12-61-802(6) (West 1996); *see also id.* § 12-61-807(1). A real estate broker who serves as a transaction-broker "is not in a fiduciary relationship with either party to a real estate transaction." *Hoff & Leigh, Inc. v. Byler*, 62 P.3d 1077, 1078 (Colo. Ct. App. 2002). A seller's agent, on the other hand, is a "broker who is engaged by and represents the seller in a real estate transaction." Colo. Rev. Stat. § 12-61-802(4)(c) (West 1996). When a real estate broker serves as a seller's agent and breaches a fiduciary duty, he "not only forfeits the commission but also is liable for the full amount of" any actual loss suffered by the seller. *See Moore & Co. v. T-A-L-L, Inc.*, 792 P.2d 794, 800 n.8 (Colo. 1990). A real estate broker is presumed to be a transaction-broker and not a seller's agent unless there is a written agreement between the broker and the party to be represented establishing a single agency relationship with the seller. *See* Colo. Rev. Stat. § 12-61-803(2)(a) (West 1996).

McGuire argues that the real estate contract established an agency relationship with Stearns. McGuire points to the "BROKER ACKNOWLEDGMENTS" section, in which the "Seller Agent/Subagent" box is checked, Aplt. App. at 144, and the "ADDITIONAL PROVISIONS" section, in which the Staffords concede that the "Seller and Seller's Agent" make no representations regarding the building's condition, *id.* at. 143.

We conclude that the real estate contract between McGuire and the Staffords is not a written agreement sufficient to transform Stearns from a transaction-broker into a seller's agent. [4] Missing from that document is a manifestation of McGuire's consent for Stearns to serve as his agent. *See City & County of Denver v. Fey Concert Co.*, 960 P.2d 657, 660 (Colo. 1998) (stating that an agency relationship requires "the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act"); *Stortroen v. Beneficial Finance Co.*, 736 P.2d 391, 395 (Colo. 1987) ("Agency is . . . a legal relation having its source in the mutual consent of the parties."). McGuire's signature does not appear after the "END OF THE CONTRACT" to coincide with Stearns' checkmark in the "Seller

_____

[4] Although the existence of an agency relationship is ordinarily a factual issue, we may resolve the issue as one of law where, as here, the material facts are not in dispute. *City & County of Denver v. Fey Concert Co.*, 960 P.2d 657, 660 (Colo. 1998).

-10-

Agent/Subagent" box. And we decline to interpret the Staffords' concession in the "ADDITIONAL PROVISIONS" section (that "the Seller and Seller's Agent" make no representations concerning the building's condition) as somehow evincing McGuire's consent to Stearns being his agent. Our view of the real estate contract as not being a written agency agreement between McGuire and Stearns is bolstered by McGuire's deposition testimony that he did not authorize Stearns to act on his behalf. *See Moses v. Diocese of Colorado*, 863 P.2d 310, 324 (Colo. 1993) (stating that "[t]he most important factor in determining whether a person is an agent is the [principal's] right to control" the manner of work). Further, we find it difficult to see how McGuire could have manifested his consent to an agency relationship via a document that he probably did not read and which he considered to be "hogwash" or a "hoax," Aplt. App. at 47, 48. Nor can we discern how McGuire's missing consent is supplied by Stearns checking agency boxes on the proposed contract that was rejected by McGuire, Stearns preparing a listing agreement that he did not sign or send to McGuire, Stearns indicating to Grove Stafford on a brokerage relationship disclosure form that Walnut Realty was working as a "seller's agent" on properties listed with Walnut Realty, or Stearns relying on the contract for a commission.

We conclude that the district court did not err in ruling that the real estate contract between McGuire and the Staffords was not a written agreement making Stearns a seller's agent.

## IV. Equitable Estoppel

McGuire alternatively argues that Stearns is estopped from asserting the absence of a written agency agreement because he (Stearns) failed to disclose the nature of the brokerage relationship. Colorado Revised Statute § 12-61-808(2)(a)(I) (West 1996) requires a transaction-broker to "disclose in writing to the party to be assisted that such broker is not acting as agent for such party and that such broker is acting as a transaction-broker." While a failure to disclose may result in administrative action by the Colorado Real Estate Commission, *id.* § 12-61-811, there is no statutory allowance for estoppel.

Assuming, without deciding, that the estoppel doctrine could be grafted onto Colorado's statutory framework for brokerage relationships, McGuire's invocation of the doctrine fails. Estoppel requires that (1) "the party to be estopped must know the facts and either intend the conduct to be acted on or so act that the party asserting estoppel must be ignorant of the true facts," and (2) "the party asserting estoppel must [reasonably] rely on the other party's conduct with resultant injury." *Committee for Better Health Care v. Meyer*, 830 P.2d 884, 891-92 (Colo. 1992). "Estoppel is predicated on a factual situation, and while in

-12-

cases where only one inference can be drawn from it, it is a question of law for the court, if there is any conflict, it is for the trier of facts. *Guthner v. Union Finance & Loan Co.*, 135 P.2d 237, 237 (Colo. 1943).

McGuire states that a genuine issue of fact exists as to whether he relied on Stearns' agency representations in the unexecuted listing agreement, the proposed contract, and the accepted contract. We reject this proposition for several reasons. First, McGuire could not have relied on any representation in the unexecuted listing agreement because Stearns never sent it to him. Second, McGuire has identified no evidence suggesting that he was aware that agency boxes were checked in the proposed contract. McGuire's general declaration statement that "[a]t all times I believed Stearns was acting as my agent," Aplt. App. at 107, is insufficient to create a genuine issue of material fact with respect to any representations in the proposed contract. *See MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005) ("Unsupported conclusory allegations . . . do not create an issue of fact.). Finally, McGuire could not have relied on any representation in the accepted contract because he probably did not read it, thought it was "hogwash" or a "hoax," and did not see that the "Seller's Agent/Subagent" box was checked.

McGuire cannot create an issue of fact by relying on his February 2003 interrogatory response stating that he "noticed right away" that the "Seller

Agent/Subagent" box was checked, Aplt. App. at 112, while ignoring his August 2003 contradictory deposition testimony. *Cf. Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (disregarding an affidavit that is contrary to the affiant's earlier sworn statements and designed to create a sham issue of fact); *Burns v. Bd. of County Comm'rs*, 330 F.3d 1275, 1282 (10th Cir. 2003) (extending *Franks* to deposition corrections that contradict the original testimony). Although the typical *Franks* scenario involves a summary judgment opponent distancing himself or herself from an earlier discovery response, we conclude that *Franks* may apply in reverse, i.e., when the summary judgment opponent spurns his or her later discovery response in order to create an issue of fact. Adjusting the *Franks* factors to fit the reverse scenario, we must assess whether the subsequent contrary discovery response was made under oath, whether the responding party had access to the pertinent evidence at the time of the subsequent contrary response, and whether the subsequent contrary response reflects confusion not exhibited in the prior response. *See Franks*, 796 F.2d at 1237. As McGuire was deposed under oath, had the ability to recall whether he read the contract, and appeared to comprehend opposing counsel's inquiries into the matter, the prior contradictory interrogatory response cannot create an issue of fact.

We conclude that the district court did not err in rejecting McGuire's estoppel defense.

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Bobby R. Baldock
Circuit Judge