**NOT RECOMMENDED FOR PUBLICATION**
File Name: 10a0443n.06

No. 08-4060

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 21, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| NORMAN WHITESIDE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| JONDREA PARRISH, et al., | ) | |
| | ) | |
| Defendants-Appellees | ) | |

**BEFORE: MARTIN and GRIFFIN, Circuit Judges; and DUGGAN,** * **District Judge**.

**DUGGAN, DISTRICT JUDGE**. Norman Whiteside, an Ohio prisoner, appeals the district

court's dismissal of his civil rights action brought pursuant to 42 U.S.C. § 1983 against Jondrea

Parrish and Virginia Workman (collectively "defendants"). Defendants are state employees working

at the Madison Correctional Institution ("MaCI") where Whiteside previously was housed.

For the reasons set forth below, we AFFIRM the district court's dismissal of Whiteside's

lawsuit against defendants.

I.

Whiteside was transferred to MaCI from another Ohio facility in 2001. When he arrived at

MaCI, Whiteside possessed several bags of legal materials. Ohio Department of Rehabilitation and

Correction ("ODRC") Regulation 59-LEG-01, based on Ohio Administrative Code Section 5120-9-

---

*The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of
Michigan, sitting by designation.

33, requires that personal property stored in an inmate's cell fit within a 2.4 cubic foot container. The regulation further provides, however, that an inmate may be granted permission to store personal legal material exceeding the allotted storage space in a secure location designated by the Warden. Whiteside received permission to store his excess legal files in a vault in his housing unit and was provided two additional footlockers in which to keep those materials.

Prior to 2002, Whiteside filed three lawsuits in the Ohio Court of Claims. He alleges in the present lawsuit that, in response to the state court cases, the MaCI staff launched a waive of retaliatory attacks against him. He also alleges that defendants targeted him for discriminatory treatment because of his membership in the NAACP.

On April 28, 2003, Whiteside received permission to keep certain excess legal materials in his cell over the weekend. The following week, after Whiteside purportedly complained to prison staff that there were certain "discrepancies and improprieties" in MaCI's fiscal accounting procedures, his cell was shaken down and left in disarray. Days later, prison officials searched Whiteside's cell and confiscated his excess legal materials. Whiteside was given the choice of sending those materials or other personal items out of the prison or disposing of them; he selected the former.

On March 24, 2005, Whiteside filed this lawsuit alleging that defendants discriminated against him and retaliated against him by confiscating his legal materials. Whiteside complained that, as a result of the confiscation of his legal materials, he could not present evidence at a trial concerning his property, expected to lose a case against the Ohio Parole Board, lacked evidence and

papers for a deposition in litigation against MaCI which resulted in the dismissal of the lawsuit, and lost another case dealing with medical malpractice.

Early in the proceedings, defendants filed a motion to dismiss in which they raised several defenses to Whiteside's claims, including that they were time-barred. In an opinion and order issued June 8, 2006, the district court held that Whiteside's claims were time-barred, except his claims alleging retaliatory confiscation of his legal materials in April 2003, and denial of his access to the courts due to the confiscation of those materials. The district court concluded that these later claims survived defendants' motion to dismiss.

Whiteside thereafter filed three motions for temporary restraining orders and/or preliminary injunctions, asking the court to enjoin certain conduct by defendants and other MaCI staff. The district court denied Whiteside's requests for declaratory relief.

On June 18, 2007, defendants filed a motion for summary judgment focusing on Whiteside's ability to satisfy the elements of his retaliation claim. Although not specifically addressing a separate denial of access to the courts claim, defendants' arguments covered the merits of this claim in that they argued Whiteside was not engaged in protected activity when he filed lawsuits in the Ohio Court of Claims.[1] Defendants alternatively argued that they were entitled to sovereign and qualified immunity.

---

[1]As set forth *infra*, the first element of a First Amendment retaliation claim is that the plaintiff engaged in protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Defendants argued below that Whiteside could not satisfy this element based on his filing of lawsuits in the Ohio Court of Claims because "a prisoner's [First Amendment] right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Id*. at 391.

In an opinion and order filed March 31, 2008, the district court granted summary judgment to defendants, concluding: "the record is clear that lawful restrictions on inmate property were generally enforced at MaCI during the relevant time period and that those restrictions were applicable to [Whiteside] regardless of his activities." On the same date, the district court entered judgment in defendants' favor. Whiteside filed a motion for reconsideration, which the district court denied on June 30, 2008. This timely appeal followed.

II.

On appeal, Whiteside challenges the district court's decisions denying his request for injunctive relief and granting defendants' summary judgment motion. As to the latter motion, Whiteside argues that his factual allegations regarding retaliation, discrimination, and denial of access to the courts raised genuine issues of material fact that should have precluded summary judgment in defendants' favor.

Whether Whiteside demonstrated disputed material issues of fact with respect to his discrimination claim is not before this court because the district court dismissed this claim based on the applicable statute of limitations in response to defendants' motion to dismiss. Whiteside's challenge to the district court's denial of his request for injunctive relief against defendants also is not before this court because his request is moot. Whiteside is no longer confined at the correctional institution where defendants are employed. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

We must address, however, Whiteside's assertion (even though this is *his* appeal) that the district court's decision granting summary judgment to defendants did not constitute a final

appealable order because the court did not address Whiteside's denial of access to the court claim.[2]

*See Bonner v. Perry*, 564 F.3d 424, 426 (6th Cir. 2009) (addressing the finality of the district court's decision *sua sponte* because the court of appeals is under an independent obligation to police its own jurisdiction). Construing his *pro se* complaint liberally*, see Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1986), Whiteside alleged two *separate* First Amendment claims that were timely filed according to the district court's decision on defendants' motion to dismiss: (1) retaliation and (2) denial of his access to the courts. When ruling on defendants' motion for summary judgment, however, the district court only addressed Whiteside's retaliation claim. Nevertheless, the court then directed the clerk to enter a final judgment in the action.

"The courts of appeals . . . have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291. A decision is final for purposes of § 1291 if the district court's decision "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521, 108 S. Ct. 1945, 1949 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 633 (1945)). In contrast, a district court's "dismissal of a single claim from a lawsuit comprising several claims is not final for purposes of appeal. Full opportunity for review of the dismissal would be available [only] following the disposition of the remaining claims" *In re Romulus Cmty. Sch.*, 729 F.2d 431, 440 (6th Cir. 1984). This panel finds that while the district court in the instant case did not address all of Whiteside's timely-filed claims,

---

[2]Whiteside also asserts that the district court failed to address his discrimination claim. As set forth earlier, however, the court ruled in response to defendants' motion to dismiss that Whiteside's discrimination claim was time-barred.

the court's summary judgment decision nevertheless "effectively ended the litigation and thus constituted a final order for the purposes of appellate review." *BKCAP, LLC v. Captec Franchise Trust 2000-1*, 572 F.3d 353, 358 (7th Cir. 2009) (quotation marks and citation omitted).

The district court's decision granting summary judgment to defendants and ordering the court clerk to enter a final judgment reflects an intent to end the litigation, with nothing "le[ft] for the court to do but execute the judgment." *Van Cauwenberghe*, 486 U.S. at 521, 108 S. Ct. at 521. "The intention of the judge is crucial in determining finality." *Vaughn v. Mobil Oil Exploration & Producing SE, Inc.*, 891 F.2d 1195, 1197 (5th Cir. 1990); *see also Peabody Coal Co. v. Local Unions Nos. 1734, 1508, 1548 United Mine Workers of Am.*, 484 F.2d 78, 84 (6th Cir. 1973). "Moreover, the Supreme Court has consistently emphasized that, consonant with legislative intent, a 'practical rather than a technical construction' best serves the policies underlying the purposes of the finality requirement." *Vaughn*, 891 F.2d at 1197 (quoting *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S. Ct. 2140 (1974)); *see also Peabody Coal*, 484 F.2d at 84.

III.

This court reviews a district court's summary judgment determination *de novo*. *Med. Mut. of Ohio v. K. Amalia Enter. Inc.*, 548 F.3d 383, 389 (6th Cir. 2008). Summary judgment is appropriate if, taking the evidence in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The central inquiry is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).

## IV.

The elements of a First Amendment retaliation claim are:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against
> the plaintiff that would deter a person of ordinary firmness from continuing to engage
> in that conduct; and (3) there is a causal connection between elements one and two–
> that is, the adverse action was motivated at least in part by the plaintiff's protected
> conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  Even if the plaintiff establishes all three

elements, the defendant may avoid liability by showing "that he would have taken the same action

in the absence of the protected activity."  *Id.* at 399.  Although defendants argued before the district

court that Whiteside could not establish any of the elements set forth above, the district court focused

on the last factor (i.e. whether they would have take the same action in the absence of the alleged

protected activity) in granting summary judgment to defendants.[3]

---

[3]In their summary judgment motion, defendants argued that Whiteside could not establish that he was engaged in protected activity based on his filing of lawsuits in the Ohio Court of Claims. The district court found it unnecessary to resolve whether those lawsuits constituted protected activity because Whiteside also alleged that defendants retaliated against him due to his membership in the NAACP and complaints about the prison's fiscal accounting procedures.  Defendants also argued that their alleged conduct did not constitute adverse action because the conduct did not deter *Whiteside* from continuing to engage in litigation activities.  The district court rejected this argument, quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999), and concluding that it is not the plaintiff's subjective response that is determinative but whether "a person of ordinary firmness" would be deterred by the defendant's actions.

In April 2003, defendants forced Whiteside to make a decision regarding the excess legal materials found in his cell. Defendants declare that Whiteside was forced to make that decision, not in retaliation for his First Amendment activities, but because he was repeatedly in violation of prison regulations that require inmate property to fit within the defined space of 2.4 cubic feet. Apparently, in April 2003, Whiteside had material that could not even fit within the excess storage space he had been allotted.

Whiteside does not dispute that prison regulations require all inmates to store their property in a 2.4 cubic foot space unless they specifically have been granted permission to keep excess material and that "everybody" at MaCI was required to comply with the regulations unless such permission had been granted. Whiteside claims, however, that he was granted permission to possess excess legal materials and defendants failed to comply with the procedures set forth in Ohio Administrative Code Section 5120-9-55 when they confiscated those materials.

First, Whiteside fails to indicate how defendants violated the procedures set forth in Section 5120-9-55. Second, even if Whiteside initially had been granted permission to keep excess legal materials in his cell and outside his locker, defendants had the authority to revoke that permission and enforce ODRC-59-LEG-01. As indicated earlier, Whiteside acknowledged that all prisoners were required to comply with the regulation.

For the above reasons, the undisputed evidence presented below demonstrated that defendants would have confiscated Whiteside's legal materials even in the absence of his protected conduct. This panel therefore concludes that the district court properly granted summary judgment to defendants with respect to Whiteside's retaliation claim. While the district court did not address

Whiteside's denial of access to the courts claim, resolution of that claim still results in the dismissal of Whiteside's lawsuit.[4]

A prisoner asserting a First Amendment denial of access to the courts claim must "show an actual injury to a non-frivolous legal proceeding arising from the defendants' alleged conduct." *Davis v. Powell*, 91 Fed. App'x 495, 496 (6th Cir. 2004) (unpublished opinion) (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S. Ct. 2174, 2180 (1996)). While prisoners enjoy a constitutional right of access to the courts, *see Bounds v. Smith*, 430 U.S. 817, 821, 97 S. Ct. 1491, 1494 (1977), that right is not without limit. *See Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174 (1996). As the Supreme Court reasoned in *Lewis*:

> . . . *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

518 U.S. at 355, 116 S. Ct. at 2182 (emphasis in original). In short, "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-*

---

[4]The panel will consider Whiteside's denial of access to the courts claim in the first instance because the parties addressed the merits of the claim in their pleadings below, resolving the claim only requires the panel to address a question of law, and "the proper resolution is beyond any doubt." *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 477 (6th Cir. 1990); *City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 255 (6th Cir. 1994).

*X*, 175 F.3d at 391.  None of the lawsuits Whiteside identified below as having been interfered with

by the confiscation of his legal materials fall within these categories.[4]


V.


For the above reasons, we **AFFIRM** the judgment of the district court.

---

[4]In the district court proceedings, Whiteside testified during his deposition that defendants' confiscation of his legal materials in April 2003 interfered with his prosecution of five lawsuits in the Ohio Court of Claims.  Whiteside did not raise a direct or collateral attack on his sentence in any of these cases and, from what the record showed, he did not allege a violation of his constitutional rights in four of the five cases.  As to the remaining lawsuit, Whiteside voluntarily dismissed the case in 2001– *before* defendants confiscated his legal materials.