**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-3806

_____

CHRISTOPHER H. WEST,
Appellant

v.

MARK EMIG; JEFFREY CARROTHERS

_____

On Appeal from the United States District Court
for the District of Delaware
(No. 1-13-cv-02103)
District Judge:  Honorable Maryellen Noreika

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 26, 2019

Before:  SMITH, *Chief Judge*, McKEE, and PHIPPS, *Circuit Judges*.

(Opinion filed:  October 9, 2019)

_____

OPINION[*]

_____

PHIPPS, *Circuit Judge*.

---

[*]  This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Christopher H. West is an inmate who has frequently ingested inedible objects. During his incarceration, he has eaten the foam from inside his mattress, and he has also swallowed writing instruments, including pens. This case is about the mattress and a pen.

West's core claim is that at two different prisons, after he ingested foam from inside his mattress, prison employees removed the mattress from his cell, in alleged violation of the Eighth Amendment's prohibition on cruel and unusual punishment. Instead of attempting to resolve the dispute through the prison grievance policy, as is typically required under the Prison Litigation Reform Act, West filed suit in the District of Delaware against two former employees of the Delaware Department of Correction, seeking five million dollars from each. West argues that his failure to pursue administrative remedies should be excused because the prisons denied him a pen needed to complete the prison grievance form – albeit for his own safety.

The District Court granted summary judgment to the two former prison employees. Specifically, the District Court found that even without a pen, West still should have made some effort to file a grievance, and he did not. For the reasons set forth below, we VACATE the judgment of the District Court and REMAND for proceedings consistent with this opinion.

I

West tended to hurt himself. Besides mattress foam and pens, he also consumed zippers ripped from mattresses, paper clips, and plastic eating utensils. The prisons placed him under Psychological Close Observation for extended periods of time, during which he was not permitted to have any type of writing instrument. Despite his behavior

2

and psychological condition, West wanted, and expected to have, a mattress, but he alleges that for certain time periods, he did not have one.

The Delaware Department of Correction had in place a grievance policy for inmates, like West, who wanted to challenge the conditions of their confinement. Under the then-existing policy, an inmate had to file a grievance using Form #584 within seven days of an incident.

West did not file a grievance using Form #584, as he now explains, because he was not permitted to have a pen. Instead, he filed a handwritten complaint in federal court. In that filing, West alleged that he did not complete the Form #584 because he was "denied for being on psychological observation" and was later "denied for time."

The underlying substance of West's case is straightforward: he claims that denying him a mattress was cruel and unusual punishment in violation of the Eighth Amendment. For the allegedly recurring denial of a mattress between September 2011 and February 2012, while incarcerated at the Howard R. Young Correctional Institution in Wilmington, Delaware, West sues former Deputy Warden Mark Emig. And for the alleged denial of a mattress from April to June 2013, while incarcerated at the James T. Vaughn Correctional Center in Smyrna, Delaware, West sues former Operations Security Superintendent Jeffrey Carrothers. Because this dispute involves a question of federal law, the District Court had jurisdiction over the claims. *See* 28 U.S.C. § 1331.

After a period of discovery, the former prison employees moved for summary judgment. They raised four defenses: (i) failure to exhaust administrative remedies;

(ii) qualified immunity; (iii) lack of supervisory liability; and (iv) failure to establish an Eighth Amendment violation.

The District Court granted summary judgment, reaching only the first of those issues, failure to exhaust. *See West v. Emig*, 2018 WL 6188775, at *1 & n.2 (D. Del. Nov. 27, 2018). In recognizing that West had not filed a grievance, the District Court concluded that West's "own inaction is to blame for his failure to exhaust, rather than unavailability of grievance procedures." *Id.* at *3. The District Court found that it was undisputed that "between September 2011 and February 2012, there were times that [West] was not on [Psychological Close Observation] status and thus would have had unlimited access to writing utensils . . . ." *Id.*

West timely appealed that adverse ruling. As an appeal of a final judgment of a District Court, jurisdiction rests with this Court. *See* 28 U.S.C. § 1291; *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521 (1988).

II

The legal issue on appeal is administrative exhaustion. Under the Prison Litigation Reform Act, or the PLRA for short, an inmate may not challenge the conditions of his or her confinement under 42 U.S.C. § 1983, without first exhausting all available administrative remedies. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88, 90-91 (2006) (explaining that, under the PLRA, exhaustion requires a prisoner to "complete the administrative review process in accordance with the applicable procedural rules"). The Supreme Court has determined that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or

4

demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013) ("Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff.").

As formulated in this Circuit, the failure-to-exhaust affirmative defense has two distinct stages. The first inquiry is whether the prison-employee defendants can demonstrate that the inmate failed to exhaust the on-the-books remedies. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (explaining that the prison's grievance policy supplies "'the yardstick' for determining what steps are required for exhaustion" (quoting *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004))); *see also Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016); *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). If the defendants can make that showing, then at the second stage, the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her.[1] *See Rinaldi*, 904 F.3d at 268.

The state of facts dictates the appropriate legal standard for evaluating the exhaustion defense. If there is no genuine dispute of material fact, then the exhaustion defense may be evaluated as a matter of law at summary judgment. If there is a genuine dispute of material fact related to exhaustion, then summary judgment is inappropriate, and a court should provide adequate notice to the parties and hold an evidentiary hearing

---

[1] This order of evaluation is not absolute, and it is permissible to consider the second stage first, *see, e.g., Small*, 728 F.3d at 271-72, but this ordering is consistent with the prison-employee defendants bearing the burden of production at the first stage, before the inmate plaintiff inherits the burden at the second.

to resolve those factual disputes, or "at least provide the parties with an opportunity to submit materials relevant to exhaustion," before resolving those factual disputes. *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018). Here, the former prison employees moved for summary judgment, and the analysis turns on whether any genuine dispute of material fact exists and whether the former prison employees are entitled to judgment as a matter of law.

On this factual record, the first-stage inquiry – whether the inmate submitted a grievance – lends itself well to evaluation at summary judgment. It is undisputed that, to challenge the conditions of his confinement, West had to submit a grievance using Form #584. It is similarly uncontested that he did not do so while at either prison. As a matter of law, therefore, the former prison employees have demonstrated that West failed to exhaust.

At the second stage of the failure-to-exhaust defense, the plaintiff inmate may demonstrate that the un-exhausted administrative remedy was unavailable to him or her. As the Supreme Court explained in *Ross v. Blake*, the term "available" means "'capable of use' to obtain 'some relief for the action complained of.'" 136 S. Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). As a further guide to understanding the term "available" as used in the PLRA, the Supreme Court reviewed precedent across federal courts and articulated three common circumstances in which prison administrative remedies are unavailable to inmates. *See id.* The parties devote their attention to one of those scenarios – the thwarting of an administrative remedy by a prison employee. Notably, however, neither the Supreme Court nor this Circuit has held that those three

6

circumstances are comprehensive, as opposed to exemplary. *See Rinaldi*, 904 F.3d at 267 n.9. Under the highly unusual facts here, we conclude that if West lacked the ability to complete the required written grievance form, the prison's administrative remedy was not within his capability to use to obtain relief, and therefore was unavailable to him.

West attempts to prove as much. No one disputes that while he was under Psychological Close Observation, he was not permitted to have a pen. Likewise, no one disputes that West did not have a mattress for periods of time. In light of those facts, West has met his burden of production, and a disputed factual issue remains: whether, within seven days of being deprived of a mattress, West had access to either a pen or another means of completing the written grievance form. That question cannot be answered on this factual record, which lacks precise dates identifying the deprivations of the mattress and a pen.

To preserve their favorable summary judgment, the former prison employees advance two arguments.

They contend that West had access to a pen once he was removed from Psychological Close Observation, and he could have then completed a grievance form. Even supposing those facts – which are not in the record on appeal – they still do not establish that West could have completed a grievance form within seven days of the deprivation of a mattress.

The former prison employess also argue that West could have made a verbal request for a pen – or even a mattress – and he did not do so. But that alone would be insufficient to sustain summary judgment here. In elaborating on circumstances in which

7

administrative remedies are unavailable, the Supreme Court examined only the unavailability of grievance policies that are "officially on the books." *Ross*, 136 S. Ct. at 1859; *see also Rinaldi*, 904 F.3d at 267; *Williams*, 482 F.3d at 639. Under that precedent, an inmate's duty to exhaust extends only to the official, on-the-books administrative remedies.[2] Thus, regardless of whether West could have availed himself of an unofficial verbal grievance policy, his obligation to exhaust extended only to the then-existing on-the-books administrative remedies. And because a genuine issue of material fact exists as to whether any official remedies were available to West at the relevant times, the award of summary judgment to the former prison employees must be vacated and the matter remanded to the District Court.

On remand, the District Court will have some flexibility and discretion. It may hold an evidentiary hearing on the exhaustion defense or offer a different opportunity to supplement the record on that issue after providing the requisite notice. *See Paladino*, 885 F.3d at 211. Alternatively, because qualified immunity, like exhaustion, is a threshold issue,[3] the District Court may instead afford the former prison employees the opportunity to renew their summary judgment motion on qualified immunity grounds.

---

[2] Certainly, unofficial processes for redressing grievances, such as making a verbal request for a pen or a mattress, may be available to inmates. And while those may assist in resolving or de-escalating potential grievances, they do not constitute on-the-books administrative remedies that require exhaustion under the PLRA.

[3] *See Rinaldi*, 904 F.3d at 265 (explaining that exhaustion under the PLRA is a threshold issue); *Small*, 728 F.3d at 270 (same); *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) ("[T]he district court should resolve any immunity question at the earliest possible stage of the litigation.").

## III

For the foregoing reasons, we VACATE the District Court's judgment and REMAND for proceedings consistent with this opinion.