**SIGNATURE MANAGEMENT TEAM, LLC, d/b/a Team, A Nevada Limited Liability Company, Appellant,**

v.

**QUIXTAR, INC., a Michigan Corporation, Appellee.**

No. 05–07–01765–CV.

Court of Appeals of Texas, Dallas.

March 13, 2009.

Susan M. Fisher, Bryan Burg, Siebman, Reynolds, Burg, Phillips & Smith, LLP, Sherman, TX, Clyde M. Siebman, Homer B. Reynolds, III, Siebman, Reynolds, Burg & Phillips, L.L.P., Plano, TX, William Charles Bundren, WM. Charles Bundren, Esq., Frisco, TX, for Appellant.

Brian S. Loughmiller, Loughmiller & Higgins, McKinney, TX, Richard E. Griffin, Alan Brandt Daughtry, Jackson & Walker L.L.P., Houston, TX, Mark R. Steiner, David C. Myers, Jackson & Walker, Dallas, TX, for Appellee.

Before Justices WRIGHT, RICHTER, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

The trial court dismissed appellant's lawsuit without prejudice based on forum non conveniens. We reverse and remand.

### I. BACKGROUND

#### A. Factual background

Appellant Signature Management Team, LLC ("Team") is a limited liability company organized in the state of Nevada with its principal business offices in Michigan. Appellee Quixtar, Inc. is a Virginia corporation with its principal place of business in Michigan. Quixtar, a successor to Am-way Corporation, is in the "multi-level marketing industry." Quixtar sells its products through an extended network of individual contractors called "individual business owners" or "IBOs." IBOs can increase their revenues by recruiting new IBOs for Quixtar. Quixtar promulgates rules to regulate how IBOs are recruited.

Team alleges that some IBOs have formed their own separate companies called "tool companies" that are devoted to selling marketing tools, self-help books, seminars, and motivational speakers to other IBOs. Team is a tool company and has developed a successful business through its sales of training, leadership, and motivational materials to IBOs. Team has held seminars and sold its materials in Texas. According to Team, Quixtar also owns a training system and sells training materials to its IBOs, thus making Quixtar a direct competitor to tool companies like Team. Team alleges that Quixtar is using its power over the interpretation of its rules governing IBOs to restrain Team's trade and business in Collin County, Texas.

Team alleges that some former IBOs who were formerly associated with Team filed a federal class action against Quixtar in California. It further alleges that Quixtar retaliated by threatening to terminate or suspend all IBOs who purchase materials from Team, offer Team materials for resale, or attend Team meetings. Among other things, Quixtar allegedly sent emails to Team-affiliated IBOs in Texas in which Quixtar accused Team of wrongdoing.

#### B. Procedural history

Team sued Quixtar in Collin County, Texas. In its original petition, Team asserted claims for tortious interference, business disparagement, and unfair competition. A week later, Quixtar filed a mo-

tion to dismiss based on the doctrine of forum non conveniens. Team amended its petition and added claims for promissory estoppel, declaratory judgment, and relief under the Texas Free Enterprise and Antitrust Act of 1983. Team also filed a response to Quixtar's motion to dismiss, supported by affidavits and other evidence. Quixtar filed written objections to some of Team's evidence.

The trial judge conducted an evidentiary hearing on Quixtar's motion to dismiss. A few days later, he signed orders granting Quixtar's motion and sustaining its objections to Team's evidence. Team filed a motion for new trial, which the trial judge denied.

## II. Issues Presented

Team presents three issues on appeal. It contends that (1) the trial court abused its discretion by dismissing the case, (2) the trial court abused its discretion by striking Team's affidavits, and (3) the trial court abused its discretion by denying Team's motion for new trial.

## III. Standard of Review

■ This case involves an application of the common-law doctrine of forum non conveniens. *See generally Sarieddine v. Moussa*, 820 S.W.2d 837, 840–41 (Tex. App.-Dallas 1991, writ denied). Our standard of review is abuse of discretion. *Sarieddine*, 820 S.W.2d at 841; *accord Seung Ok Lee v. Ki Pong Na*, 198 S.W.3d 492, 495 (Tex.App.-Dallas 2006, no pet.).

■ We also review a trial court's evidentiary rulings and its denial of a motion for new trial for abuse of discretion. *See Carbonara v. Tex. Stadium Corp.*, 244 S.W.3d 651, 655 (Tex.App.-Dallas 2008, no pet.) (evidentiary rulings); *Dugan v. Compass Bank*, 129 S.W.3d 579 (Tex.App.-Dallas 2003, no pet.) (denial of motion for new trial).

## IV. Forum Non Conveniens

## A. Applicable law

■ Forum non conveniens is an equitable doctrine that authorizes a court to decline to exercise jurisdiction over an action for reasons of the convenience of the parties and witnesses and in the interest of justice. *Van Winkle–Hooker Co. v. Rice*, 448 S.W.2d 824, 826 (Tex.Civ.App.-Dallas 1969, no writ). "The central theme of the doctrine is that a court will decline jurisdiction of the action when it appears that the scene of the controversy is laid in another state, so that the litigants and witnesses will have to come from that state, making it inconvenient to try it in the jurisdiction involved." *Id.* The defendant bears the burden of raising the doctrine of forum non conveniens by motion to dismiss, and it generally bears the burden of demonstrating that the plaintiff's choice of forum should not be honored. *Sarieddine*, 820 S.W.2d at 841.

■ The first step of a forum-non-conveniens analysis is the determination of whether an available and adequate alternative forum exists for the plaintiff's suit. *Id.* A forum is "available" if the entire case and all of the parties can come within the jurisdiction of that forum. *Id.* A forum is "adequate" if the parties will not be deprived of all remedies or treated unfairly. *Id.* The defendant bears the burden of showing that another forum is available; if it establishes the existence of an available forum, the burden shifts to the plaintiff to show that the available forum is not adequate. *Id.*

■ If an available and adequate alternative forum exists, the inquiry shifts to an examination of various factors reflecting the private interests of the litigants and the public interests of the fo-

rum. *Id.* at 840, 842–43. The private-interest factors include the ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses, the costs of obtaining attendance from willing witnesses, all other practical matters that affect the difficulty and expense of trial, and the enforceability of a judgment obtained in the forum state. *Id.* at 842. The public-interest factors include the burden imposed on the citizens of the state, the burden on the trial court, and the general interest in having localized controversies decided in the jurisdiction in which they arose. *Id.* at 840. The private- and public-interest factors are sometimes referred to as the *Gulf Oil* factors, after the seminal Supreme Court case embracing them. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The defendant must establish that the balance of these factors strongly favors dismissal. *Sarieddine,* 820 S.W.2d at 842.[1]

In granting Quixtar's motion to dismiss, the trial court implicitly determined that an alternative forum existed and that the factors strongly favored dismissal. We review its conclusions on these matters for abuse of discretion.

## B. Whether Michigan is an available and adequate alternative forum

■ The first inquiry is whether an alternative forum to Texas is available and adequate. As movant, Quixtar bore the burden of showing that another forum is available; if Quixtar successfully carried this burden, then Team bore the burden of

showing the available forum is not adequate. *Sarieddine,* 820 S.W.2d at 841. A forum is "available" if the entire case and all of the parties can come within the jurisdiction of that forum. *Id.*

As to availability, Team acknowledges that both it and Quixtar have a "principal office" or "principal place of business" in Michigan. It makes no argument that Michigan would lack personal jurisdiction over it or Quixtar. It argues only that Michigan is not an available forum because Michigan would not be able to hear Team's claim under the Texas Free Enterprise and Antitrust Act. In response, Quixtar argues that Michigan's ability to consider Team's state-law antitrust claim is not relevant to the question of whether Michigan is "available" as a forum. Quixtar submits that this factor pertains only to the "adequacy" of Michigan as a forum.

We agree with Quixtar. In *Sarieddine,* we concluded that Lebanon was an available forum simply because both parties were citizens of Lebanon. 820 S.W.2d at 842. In this case, both parties have principal offices or places of business in Michigan. We did not mention possible disparities between Texas and Lebanese law as a concern that affects the availability of an alternative forum. Moreover, in the recent case of *In re Pirelli Tire, L.L.C.,* the Texas Supreme Court considered whether a forum-non-conveniens dismissal was required in a case arising from a truck accident that occurred in Mexico. 247 S.W.3d 670, 673 (Tex.2007) (plurality op.). The plaintiffs argued that Mexico was not an adequate alternative forum because,

1. We note that a plurality of the Texas Supreme Court has indicated that the balance should not be weighted so heavily in favor of the plaintiff when the plaintiff is not a resident of the forum state. *See In re Pirelli Tire, L.L.C.,* 247 S.W.3d 670, 675 (Tex.2007) (plurality op.) ("[F]orum-non-conveniens doctrine generally affords substantially less defer-

ence to a nonresident's forum choice."). But in the absence of a decision by a majority of the Texas Supreme Court or by this Court sitting en banc repudiating our prior holding in *Sarieddine,* we are bound to follow it. *See MobileVision Imaging Servs., L.L.C. v. LifeCare Hosps. of N. Tex., L.P.,* 260 S.W.3d 561, 566 (Tex.App.-Dallas 2008, no pet.).

among other things, Mexico does not recognize a cause of action for strict liability. *Id.* at 678. The plurality analyzed the substantive differences between Texas law and Mexico law in terms of the adequacy of a Mexican forum, not its availability. *Id.* The plurality also concluded that differences that make the alternative forum's laws less favorable to the plaintiff are entitled to little if any weight in the adequacy analysis. *Id.* Although *Pirelli Tire* involved statutory forum non conveniens, the plurality relied heavily on precedents applying common-law forum non conveniens, *see generally id.* at 675–79, so we consider it additional persuasive authority that differences between the law of Texas and the law of Michigan do not bear on the question of Michigan's "availability" as a forum. We conclude that Quixtar sufficiently demonstrated that Michigan is an available alternative forum for Team's lawsuit.

■ Once Quixtar showed that Michigan was an available forum, the burden shifted to Team to demonstrate that Michigan was not an adequate forum. *Sariedine,* 820 S.W.2d at 841. The *Pirelli Tire* plurality opined "[a]n alternative forum is adequate if the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." 247 S.W.3d at 678 (internal quotations and citation omitted); *accord Sariedine,* 820 S.W.2d at 841. Team argues that Michigan is not an adequate forum because Michigan will not entertain Team's Texas antitrust claim and because Team will lose advantageous subpoena rules available only under the Texas antitrust statute. Even assuming Team's assertions are correct, these disadvantages do not rise to the level of deprivation of all remedies or unfair treatment. The plaintiffs in *Pirelli Tire* faced much more severe disadvantages under Mexico law compared to Texas law, but the plurality still concluded that Mexico provided an adequate forum for their claims. 247 S.W.3d at 678.

We conclude that the trial court did not abuse its discretion by concluding that Michigan was an available and adequate alternative forum for Team's lawsuit.

## C. Balancing the *Gulf Oil* factors

Next we review the evidence to determine whether the trial court acted arbitrarily or unreasonably by deciding that the balance of the *Gulf Oil* factors strongly favored dismissal of Team's lawsuit.

### 1. Team's evidence

■ At the outset, we must consider Team's second issue on appeal, whether the trial court erred by sustaining Quixtar's objections to some of Team's affidavits and granting Quixtar's motion to strike. Team attached four affidavits to its response to the motion to dismiss, and it separately filed seven other affidavits in support of its response. Quixtar filed written objections to nine of Team's eleven affidavits, and the trial court sustained all of Quixtar's objections. On appeal, Team complains about the striking of six of its affidavits.

The trial court struck the six affidavits in question on the ground that they were cumulative. All six affidavits were executed by customers of Team residing in Texas. In their affidavits, they recounted their relationships with Team, the actions taken by Quixtar in August 2007 to discourage IBOs from using Team materials, the effects of Quixtar's actions, and the hardship that would be imposed on them to testify at a trial in Michigan. Two of the affiants, plus one other Team customer who resides in Texas, testified live at the hearing to the same or similar facts. We conclude that the trial court did not abuse

its discretion by striking those six affidavits as cumulative of the testimony presented at the hearing. *See* Tex.R. Evid. 403. We overrule Team's second issue on appeal.

## 2. Private-interest factors

■ We next consider the evidence supporting Quixtar's position as to the private-interest factors, keeping in mind that Quixtar bore the burden of proof. The private-interest factors include the availability of compulsory process against unwilling witnesses, the cost of obtaining attendance by willing witnesses, relative ease of access to other sources of proof, and all other practical and logistical issues surrounding a trial. *Sarieddine,* 820 S.W.2d at 842.

First, we consider the issue of whether unwilling witnesses can be compelled to testify in the competing forums of Texas and Michigan. Quixtar identified no likely but unwilling witnesses who are beyond the subpoena power of the Collin County district court. Nor did Quixtar identify any probable unwilling witnesses who would be within the subpoena power of a Michigan court but not the Collin County district court. Team argues that it intends to call as witnesses certain Texas residents who received Quixtar's emails about Team and that Quixtar made no showing that these witnesses would be amenable to process from a Michigan court. We conclude that this first factor does not support the trial court's ruling and actually weighs somewhat against it.

Next, we consider the issue of cost and convenience of attendance by willing witnesses. Quixtar filed affidavit evidence that almost all of Quixtar's potential trial witnesses reside in Michigan, including five Quixtar employees. Quixtar's affidavit also shows that it will likely depose eleven people who are affiliated with Team and reside in Michigan. We note, however,

that Quixtar did not introduce any evidence attempting to quantify the additional witness expense that a Texas forum would entail. This weakens the impact of its evidence. *See In re Williams Gas Processing Co.,* No. 14–07–01026–CV, 2008 WL 257275, at *2 (Tex.App.-Houston [14th Dist.] Jan. 31, 2008, orig. proceeding [mand. denied] ) (mem.op.) (discounting general assertions regarding remote location of trial witnesses and evidence when not supported by specific details about burdensomeness and expense). Team argues that it intends to call a number of Texas residents as trial witnesses about the emails they received from Quixtar and the negative effects those emails have had on their business relationships with Team. Two of its witnesses at the hearing testified that it would be inconvenient or difficult for them to travel to Michigan to testify at a trial. We conclude that the evidence, even viewed in the light most favorable to the trial court's ruling, favors Quixtar only marginally on this factor.

Quixtar presented affidavit evidence that "the overwhelming majority" of its records that it intends to use as evidence in the case are maintained at its offices in Michigan. Its affidavit evidence also shows that none of its records relating to this dispute are maintained in Texas. But as Team points out, Quixtar adduced no evidence of the volume of those records or their importance to Quixtar's defense. Quixtar also adduced no evidence as to how difficult or expensive it would be to transport them to Texas for trial purposes. We conclude that Quixtar did not adduce any probative evidence that the location of its records strongly favors Michigan over Texas as a matter of convenience.

There should be no question regarding the enforceability of a judgment obtained in either forum. *See* U.S. Const. art. IV,

§ 1 (full faith and credit clause). This factor carries no weight in our analysis.

We conclude that Quixtar's evidentiary showing under the private-interest factors was weak.

### 3. Public-interest factors

 The public-interest factors include the burden imposed on the citizens of the forum state, the burden on the trial court, and the general interest in having localized controversies decided in the jurisdiction in which they arose. *Sarieddine,* 820 S.W.2d at 840. We may consider docket congestion, choice-of-law problems, and the various forums' relative degree of interest in the litigation. *Pirelli Tire,* 247 S.W.3d at 677, 679.

Team is a Nevada limited liability company with its principal business offices in Michigan. As between Texas and Michigan, Michigan has a greater interest in seeing that Team is compensated for any injuries. Quixtar is a Virginia corporation with its principal place of business in Michigan. Its business is national and international in scope, so both Texas and Michigan have an interest in protecting their citizens from wrongful conduct by Quixtar, such as the alleged publication of false and disparaging information about its competitors. Arguably, it would be more fair to require Michigan courts and jurors to bear the time and expense of litigating a business dispute between two businesses that are essentially Michigan enterprises. To the extent the controversy has a center of gravity, that center appears to be in Michigan, where a key meeting between Team and Quixtar personnel took place and where Quixtar took the actions that have allegedly resulted in injury to Team. On the other hand, Quixtar has not demonstrated that the case will present any complex choice-of-law issues or that Michigan law is so dissimilar to Texas law that a Texas court would find it difficult to ad-

minister. Nor did Quixtar demonstrate that docket congestion is an issue in Collin County district court.

We conclude that Quixtar did not show that the public-interest factors, on the whole, strongly favor Michigan as a more appropriate forum for Team's lawsuit than Texas.

### 4. Conclusion

We are mindful that under an abuse-of-discretion standard of review, we may not substitute our own judgment for that of the trial court. *Baylor Univ. Med. Ctr. v. Rosa,* 240 S.W.3d 565, 569 (Tex.App.-Dallas 2007, pet. denied). We are also mindful of the principles that we must review the evidence in the light most favorable to the court's action and that ordinarily we cannot find an abuse of discretion if some substantive and probative evidence supports the action. *In re C.C.J.,* 244 S.W.3d 911, 917 (Tex.App.-Dallas 2008, no pet.). In this case, however, we must also enforce the principle that the plaintiff's choice of forum must be respected unless evidence shows the private-interest and public-interest factors *strongly* favor dismissal in favor of another forum. *Sarieddine,* 820 S.W.2d at 840. The ultimate test for abuse of discretion in this case, then, is whether the trial court acted arbitrarily or unreasonably in concluding that Quixtar had met this heavy burden. *Cf. Perry Homes v. Cull,* 258 S.W.3d 580, 597–98 (Tex.2008) ("Every abuse-of-discretion review is not identical because a trial judge's discretion may be applied to scores of situations and in many different ways.") (internal quotations and footnote omitted), *cert. denied,* —— U.S. ——, 129 S.Ct. 952, 173 L.Ed.2d 116 (2009).

We conclude that the trial court abused its discretion. Even when viewed in the light most favorable to Quixtar, the evidence that the private interests of the

parties and witnesses would be strongly disserved by retaining this case in Texas as compared to a similar suit in Michigan was weak. At most, Quixtar showed that most of its witnesses reside in Michigan and most of its relevant records are likewise kept there. But it did not attempt to quantify the actual burden that a Texas trial would impose on it or its witnesses. And Quixtar did not demonstrate that any necessary witnesses are beyond the subpoena power of the Collin County district court. On the whole, the public-interest factors also do not favor Michigan over Texas as the appropriate forum to bear the administrative burdens of this litigation. Quixtar's burden was to show that the *Gulf Oil* factors in their totality strongly favor dismissal. Given the weakness of Quixtar's evidentiary showing and the law's strong preference for respecting the plaintiff's choice of forum, we hold that the trial court erred by granting Quixtar's motion to dismiss. *Cf. Sarieddine,* 820 S.W.2d at 842–44 (reversing trial court's forum-non-conveniens dismissal of suit by Lebanese citizen residing in Washington against Lebanese citizen residing in Bahrain).

We sustain Team's first issue on appeal. Accordingly, we need not address its third issue, in which it attacks the trial court's denial of its motion for new trial.

### V. DISPOSITION

For the foregoing reasons, we reverse the judgment of the trial court dismissing Team's lawsuit and remand for further proceedings.