Opinion issued April 8, 2010 



 














In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-08-00922-CV
__________
 
HARRISON VINSON, Appellant
 
V.
 
AMERICAN BUREAU OF SHIPPING, GLOBALSANTAFE DRILLING
CORPORATION, GLOBALSANTAFE CORPORATION,
GLOBALSANTAFE OFFSHORE SERVICES, INC., GLOBALSANTAFE
OPERATIONS, NATIONAL OILWELL L.P., NATIONAL OILWELL
VARCO, L.P., AND NATIONAL OILWELL NORWAY, A.S. (F/K/A
HYDRALIFT A.S.A.), Appellees
 

 
 
On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2005-34664
 

 
 
O P I N I O N
          Appellant, Harrison Vinson, challenges the trial court’s order dismissing, under
the doctrine of forum non conveniens, his personal injury lawsuit against appellees,
American Bureau of Shipping (“ABS”); GlobalSantaFe Drilling Corporation,
GlobalSantaFe Corporation, GlobalSantaFe Offshore Services, Inc., and
GlobalSantaFe Operations (collectively, “GlobalSantaFe”); and National Oilwell
L.P., National Oilwell Varco, L.P., and National Oilwell Norway, A.S. (F/K/A
Hydralift A.S.A.) (collectively, “NOV”). In three issues, Vinson contends that this
Court lacks jurisdiction over this appeal because the trial court’s order dismissing his
lawsuit against all appellees does not dispose of all other parties and claims that were
before the trial court, the trial court abused its discretion in dismissing his lawsuit
under the doctrine of forum non conveniens, and the trial court’s order dismissing his
lawsuit violates his right to a jury “by forcing him to litigate in a country without
American constitutional protections.”



           We deny the motions to dismiss the appeal, reverse the trial court’s order
dismissing Vinson’s lawsuit against appellees, and remand for proceedings consistent
with our opinion.Background
          In his petition, Vinson alleges that he suffered personal injuries while working
as a crew member aboard the DEVELOPMENT DRILLER I (“DDI”), a semi-submersible drilling rig, when a derrick on the DDI failed and collapsed. 
GlobalSantaFe owned and operated the DDI, and NOV and ABS, along with other
parties, designed, manufactured, assembled, marketed, and sold the derrick, which
Vinson contends was “unreasonably and dangerously defective.” Vinson asserts
claims for products liability, negligence, Jones Act


 negligence, unseaworthiness, and
maintenance and cure against appellees and others.
          NOV filed its motion to dismiss Vinson’s lawsuit under the doctrine of forum
non conveniens,


 arguing that Texas has “no legitimate connection with the
controversy” because Vinson was a resident of Alabama, Vinson sustained his
injuries aboard the DDI in a shipyard in Singapore, all but one of the named
defendants are foreign entities, and Vinson had received medical treatment in
Singapore. NOV asserted that Singapore provides a remedy for Vinson’s personal
injuries, access to proof is easier in Singapore, and Singapore has the most significant
relationship to the controversy and an interest in determining liability. NOV also
asserted that “all defendants” in the lawsuit agreed to submit to the jurisdiction of
Singapore courts and to waive the statute of limitations to allow Vinson to refile his
claims there. In support of its motion, NOV attached the affidavit and deposition of
Michael Kucharski, GlobalSantaFe’s director of the semi-submersible building
program and the building of the DDI, as well as an affidavit of Jason Lim, an
advocate and solicitor in Singapore.


 ABS and GlobalSantaFe joined in NOV’s
motion, but did not file any separate evidence. 
          In his response to NOV’s motion to dismiss, Vinson asserted that Houston is
the forum with the most significant connection to the lawsuit. He noted that
GlobalSantaFe, who was his employer and the owner and operator of the DDI, is
based in Houston and the DDI is currently working in the Gulf of Mexico. Vinson
asserted that appellees negotiated and signed relevant contracts regarding the building
of the DDI in Texas, Kucharski lived in Houston, GlobalSantaFe had hired the
Houston office of Det Norske Veritas (“DNV Houston”) to investigate the derrick
collapse, the relevant persons and documents pertaining to the investigation are
located in Houston, there are no persons with any significant knowledge regarding
the derrick collapse and the subsequent investigation in Singapore, and there is no
relevant evidence related to the construction of the DDI or the derrick collapse in
Singapore. Vinson stated that all of his medical care, other than his brief initial
emergency room visit in Singapore, occurred both in Alabama and Houston and much
of his medical care was coordinated through GlobalSantaFe’s Houston office. Vinson
attached as evidence to his response a letter from GlobalSantaFe’s Houston office
authorizing maintenance payments to him, his medical records from the Singapore
emergency room visit, Kucharski’s deposition, correspondence from Global SantaFe
representatives in Houston regarding medical care provided to Vinson in Houston,
and documents showing that certain DNV Houston personnel are located in Houston
offices. 
          The trial court granted NOV’s motion and dismissed “Vinson’s causes of
action” pursuant to the conditions that appellees agree to waive the statute of
limitations to allow Vinson to refile his suit in Singapore and to submit to the
jurisdiction of Singapore courts. The trial court also stated, “This is a final appealable
judgment” and “[a]ll relief not expressly granted is denied.” Vinson filed a motion
to modify judgment and a motion for new trial, which the trial court denied. 
          After the trial court dismissed Vinson’s lawsuit, an entity, which Vinson and
appellees refer to as “Bailey,” filed a special appearance and answer subject thereto. 
Although Vinson had named Bailey as a defendant in his petition, Bailey had not
appeared or answered in the lawsuit prior to the dismissal and the overruling of
Vinson’s motion for new trial. Thus, Bailey was not identified as a party joining in
NOV’s motion to dismiss, the evidence the parties presented in regard to the
dismissal did not concern Bailey in any significant detail, and the trial court did not
include any reference to Bailey in its dismissal order or require Bailey to agree to
submit to the jurisdiction of Singapore courts or waive limitations. 
          The trial court, in support of its dismissal order, entered findings of fact and
conclusions of law, in which it “noted” that Vinson was an Alabama resident injured
on a vessel undergoing construction in a shipyard in Singapore; GlobalSantaFe was
a Cayman Island company; Bailey, which manufactured and designed the derrick, was
a Dutch company; and employees of JSL Shipyard, a Singapore company, were
testing the derrick when it collapsed. It also noted that Vinson’s “point of origin”
was Alabama, he did not travel through Texas to or from his employment, and he
lived in Singapore at the time of the accident. The trial court also stated that “all of
the fact witnesses to the accident who were present in or about the time of the
accident are located in Singapore and/or they are from various other parts of the
world (and not Texas),” Vinson received medical treatment in Singapore before
returning home to Alabama and receiving further medical treatment, and “it was only
after [Vinson] retained an attorney in Houston that he was referred by his attorneys
to a doctor in Houston, who he saw on only two occasions over two years ago.” The
trial court also concluded that Vinson did not qualify as a Jones Act seaman because
he was not injured aboard a “vessel in navigation.” 
          In summary, the trial court concluded that Singapore, “where the accident
occurred, where the fact witnesses to the accident have been located, and where
[Vinson] first received medical treatment,” provides a remedy to Vinson; it is an
adequate alternative forum; and a Singapore court could “best apply applicable
Singapore law.” 
Appealable Order
          At the outset, we note that both Vinson and NOV have filed motions to dismiss
this appeal. In his first issue, Vinson states that he filed his notice of appeal “out of
an abundance of caution” and argues that this Court does not have jurisdiction over
his appeal because the trial court’s dismissal order did not dispose of all parties. 
NOV asserts that “the grant of a forum non conveniens dismissal is an interlocutory
order that is not appealable.” 
 
 
NOV’s Motion to Dismiss the Appeal
          In support of its motion to dismiss the appeal,


 NOV relies upon Martinez v.
Bell Helicopter Textron, Inc., 49 S.W.3d 890 (Tex. App.—Fort Worth 2001, pet.
denied). In Martinez, the Fort Worth Court of Appeals considered a trial court’s
order dismissing the case for forum non conveniens “pending the outcome of the
resolution of this dispute in the Courts of the Republic of Colombia.” Martinez v.
Bell Helicopter Textron, Inc., 49 S.W.3d 890, 891 (Tex. App.—Fort Worth 2001,
pet. denied). The trial court had stated in its dismissal order that it maintained
“continuing jurisdiction over the parties so as to assist in the resolution of any
discovery disputes that may arise between the parties and for which the Colombian
Courts do not provide an adequate, convenient method of resolution.” Id. Based
upon this statement, the court of appeals concluded that the order was “interlocutory
and not a final judgment.” Id. The court did not state that forum non conveniens
dismissal orders are generally non-appealable. The trial court’s dismissal order in the
instant case does not contain a provision similar to the one discussed in Martinez. 
NOV also cites Fowler v. Fowler, No. 10-01-294-CV, 2004 WL 68106 (Tex.
App.—Waco Jan. 14, 2004, no pet.) (mem. op.). However, Fowler represents one of
the only, if not the only, Texas case to have stated, in general terms, that “[a] ruling
on a plea of forum non conveniens is not an appealable order.” Fowler, 2004 WL
68106, at *2. In support of this general statement, Fowler cites only Martinez, which
is substantively distinguishable. Id. 
          We conclude that to the extent that Fowler and Martinez could be construed
to hold that forum non conveniens dismissal orders are generally not final appealable
orders, Fowler and Martinez go against the great majority of Texas and federal
authorities indicating the contrary. See, e.g., VE Corp. v. Ernst & Young, 860 S.W.2d
83, 84 (Tex. 1993) (remanding case to court of appeals for determination of appeal
of trial court’s order granting forum non conveniens dismissal); Signature Mgmt.
Team, LLC v. Quixtar, Inc., 281 S.W.3d 666, 673 (Tex. App.—Dallas 2009, pet.
filed) (reviewing, and reversing, trial court’s forum non conveniens dismissal); Lalia
v. Parker Drilling Co., No. 01-07-00281-CV, 2009 WL 618248, at *6 (Tex.
App.—Houston [1st Dist.] Mar. 12, 2009, pet. denied) (mem. op.) (reviewing, and
affirming, trial court’s forum non conveniens dismissal). Although most, if not all,
of the Texas cases reviewing forum non conveniens dismissal orders lack any
significant discussion of the general ability to appeal such orders, we conclude that
“[t]he appealability of forum non conveniens dismissal orders is so well established,
and so much in conformity with the ordinary rule that dismissal of an entire action is
final, that most appeals are decided without commenting on jurisdiction.” See 15A
Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal
Practice & Procedure § 3914.12, at n.23 (3d ed. 2009) (citing Piper Aircraft Co.
v. Reyno, 454 U.S. 235, 102 S. Ct. 252 (1981)); see also Abad v. Bayer Corp., 563
F.3d 663, 665 (7th Cir. 2009) (stating that “dismissal of a case on grounds of forum
non conveniens is deemed a final judgment appealable . . . even though it does not
end the litigation”); 32 Am. Jur. 2d Federal Courts § 1359 (2010) (stating that
granting of forum non conveniens motion is final appealable judgment “even when
the order of dismissal is conditional”).



          Accordingly, we deny NOV’s motion to dismiss the appeal.
Vinson’s Motion to Dismiss the Appeal
          In response to Vinson’s argument that this Court lacks jurisdiction over this
appeal, NOV asserts that Bailey’s special appearance did not affect the finality of the
order and “[t]he fact that the dismissal order does not mention Bailey does not matter
if it is clear, as here, that the trial court intended to dispose of the entire case.” 
           NOV, GlobalSantaFe, and ABS, the only defendants who had answered and
appeared in the lawsuit at the time NOV filed its motion to dismiss, all joined the
motion and agreed to waive limitations and submit to the jurisdiction of the Singapore
courts to allow Vinson to refile there. In granting the motion to dismiss, the trial
court cited appellees’ stipulations, expressly dismissed “Vinson’s causes of action”
without any limitation, and stated, “This is a final appealable judgment” and “[a]ll
relief not expressly granted is denied.” 
          Only after the trial court had ordered the dismissal of all of “Vinson’s causes
of action” in what it intended to constitute a final, appealable judgment, and only after
the trial court had denied Vinson’s motions to modify judgment and for new trial, did
Bailey, for the first time, file its special appearance, asserting that the trial court
lacked jurisdiction over it. 
          The special appearance filed by Bailey did not, as asserted by Vinson, have the
effect of destroying the finality of the trial court’s dismissal order, which disposed of
all of Vinson’s claims pending before the trial court. We recognize that the Texas
Supreme Court has explained that “[a]n order does not dispose of all claims and all
parties merely because” the words “final” and “appealable” appear in the order. See
Lehmann v. Har-Con Corp., 39 S.W.3d 191, 205 (Tex. 2001). We also recognize that
the order in this case does not have the exact language suggested by the supreme
court as providing “no doubt” as to the finality of a judgment. See Lehmann, 39
S.W.3d at 205–06 (suggesting, “This judgment finally disposes of all parties and all
claims and is appealable”). However, the supreme court in Lehmann also explained
that “a judgment issued without a conventional trial is final for purposes of appeal if
“either it actually disposes of all claims and parties then before the court, regardless
of its language, or it states with unmistakable clarity that it is a final judgment as to
all claims and all parties.” Id. at 192–93. A judgment is final “if it disposes of all
pending parties and claims in the record.” Id. at 195. The supreme court noted that
“whether a judicial decree is a final judgment must be determined from its language
and the record in the case.” Id. at 195, 205–06. We conclude, based upon the
language used by the trial court in dismissing Vinson’s causes of action without any
limitation, as well as our review of the entire record in this case, that the trial court’s
forum non conveniens dismissal order is final and appealable. 
          We deny Vinson’s motion to dismiss the appeal and overrule his first issue.
Forum Non Conveniens
          In his second and third issues, Vinson argues that the trial court erred in
dismissing his lawsuit under the doctrine of forum non conveniens because “the
record is devoid of any probative evidence that Singapore would be a more
convenient forum than Houston or that maintaining the lawsuit here would work a
substantial injustice on [NOV], GlobalSantaFe and ABS.” He further argues that
Houston is actually the most convenient forum because NOV, GlobalSantaFe, and
ABS have their headquarters here, most of the relevant fact witnesses are in Houston,
and all relevant documents are in Houston. He asserts that the trial court’s dismissal
would require him to pursue his claims in Singapore, where none of the critical
witnesses reside and which does not provide the right to trial by jury. 
          We review a trial court’s decision about whether to dismiss a case under the
doctrine of forum non conveniens for an abuse of discretion. In re Gen. Elec. Co.,
271 S.W.3d 681, 685 (Tex. 2008). A court abuses its discretion if its decision is
arbitrary, unreasonable, or without reference to guiding principles. Id. 
          The Texas Civil Practice and Remedies Code provides,
If a court of this state, on written motion of a party, finds that in the
interest of justice and for the convenience of the parties a claim or action
to which this section applies would be more properly heard in a forum
outside this state, the court shall decline to exercise jurisdiction under
the doctrine of forum non conveniens and shall stay or dismiss the claim
or action. In determining whether to grant a motion to stay or dismiss
an action under the doctrine of forum non conveniens, the court may
consider whether:
 
          (1)     an alternate forum exists in which the claim or action may
be tried;
 
          (2)     the alternate forum provides an adequate remedy;
 
          (3)     maintenance of the claim or action in the courts of this
state would work a substantial injustice to the moving
party;
 
          (4)     the alternate forum, as a result of the submission of the
parties or otherwise, can exercise jurisdiction over all the
defendants properly joined to the plaintiff's claim;
 
          (5)     the balance of the private interests of the parties and the
public interest of the state predominate in favor of the
claim or action being brought in an alternate forum, which
shall include consideration of the extent to which an injury
or death resulted from acts or omissions that occurred in
this state; and
 
          (6)     the stay or dismissal would not result in unreasonable
duplication or proliferation of litigation.
 
Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 3.04, 2003 Tex. Gen. Laws 847, 854
(amended 2005) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 71.051
(Vernon 2008)). After the Legislature amended section 71.051 in 2003, section
71.051 no longer “contain[ed] language placing the burden of proof on a particular
party in regard to the factors” and did not “require that a party prove each factor.”


 
In re Gen. Elec. Co., 271 S.W.3d at 686. Rather, section 71.051 “simply requires the
trial court to consider the factors, and it must do so to the extent the factors apply.”


 
Id. at 687. Moreover, “[t]o the extent evidence is necessary to support the positions
of the parties, the trial court must base its findings and decision on the weight of the
evidence, and certainly is entitled to take into account the presence or absence of
evidence as to some issue or position of a party.” Id. 
Adequate Alternative Forum
          We first consider whether Singapore offers an adequate alternative forum. 
Tex. Civ. Prac. & Rem. Code Ann. § 71.051(b)(1)–(2). Vinson argues that
Singapore is not an adequate alternative forum primarily because it deprives him of
“his constitutionally guaranteed right to a jury trial,” and he complains that
dismissing his case to Singapore would result “in an American citizen being forced
to pursue his claims against three Houston-based businesses [NOV, GlobalSantaFe,
and ABS] and a Norwegian corporation [Bailey] in Southeast Asia under Singaporean
law.”
          “Ordinarily, an alternate forum is shown if the defendant is ‘amenable to
process’ in the other jurisdiction.” In re Gen. Elec. Co., 271 S.W.3d at 688 (citing
Piper Aircraft Co., 454 U.S. at 254 n. 22, 102 S. Ct. 252). Moreover, “[t]hat the
substantive law of an alternative forum may be less favorable to the plaintiff is
entitled to little, if any, weight.” In re Pirelli Tire, L.L.C., 247 S.W.3d 670, 678 (Tex.
2007). Although “[t]here may be circumstances where an alternate forum is not
adequate because the remedies it offers are so unsatisfactory that they really comprise
no remedy at all,” “comparative analyses of procedures and substantive law in
different forums should be given little weight in forum non conveniens analysis
because such analyses pose significant practical problems.” In re General Elec. Co.,
271 S.W.3d at 688. Accordingly, “a comparative analysis of the procedures, rights,
and remedies” available in Texas and Singapore “should only be given weight” if
Singapore “would in substance provide no remedy at all.” Id.; see also In re Pirelli
Tire, L.L.C., 247 S.W.3d at 678 (stating that “an alternative forum is adequate if the
parties will not be deprived of all remedies or treated unfairly, even though they may
not enjoy the same benefits as they might receive in an American court”) (citations
omitted); Gomez de Hernandez v. Bridgestone/Firestone North American Tire,
L.L.C., 204 S.W.3d 473, 483 (Tex. App.—Corpus Christi 2006, pet. denied) (stating
that “primary consideration is whether the alternate forum entitles appellants to a
remedy for their losses, even if compensation for their injuries is less than what may
be awarded in a Texas court”).
          Here, NOV, GlobalSantaFe, and ABS have all consented to condition the
forum non conveniens dismissal upon their waiving of the limitations bar and
submitting to the jurisdiction of Singapore courts. See Tex. Civ. Prac. & Rem. Code
Ann. § 71.051(c). NOV, in support of its motion to dismiss, attached an affidavit
from Jason Lim, an advocate and solicitor in Singapore and a partner in a law firm in
Singapore, who testified that Singapore has a common law system modeled on the
English system, Singapore courts have jurisdiction over personal injury claims when
defendants have submitted to the jurisdiction of the courts, the judge in Singapore
courts is the “arbiter of both facts and law,” and a successful plaintiff in a tort or
negligence action in Singapore “can expect to recover damages, interests, and costs”
in an amount determined by the court. We conclude that NOV presented evidence
demonstrating that Singapore would allow Vinson “some recovery” for the personal
injuries he sustained and, thus, that Singapore constitutes an adequate alternative
forum. See Berg v. AMF Inc., 29 S.W.3d 212, 217 (Tex. App.—Houston [14th Dist.]
2000, no pet.) (concluding that because Canadian law would allow some recovery,
appellees demonstrated adequate remedy under Canadian law). 
          In regard to Vinson’s complaint about the lack of the right to trial by jury in
Singapore, we recognize that in In re General Electric, the Texas Supreme Court, in
analyzing whether state and federal courts in Maine provided an adequate alternative
forum for the plaintiff’s claims, noted that the courts in the alternative forum were
similarly bound to afford the plaintiff the rights to a jury trial and due process under
the Constitution. 271 S.W.3d at 689 (citing U.S. Const. amend. VII, amend XIV, §
1). Based, in part, upon these considerations, the supreme court concluded that
Maine courts and a federal multi-district litigation panel to which the case could
eventually be assigned fell “within the Legislature’s intent that the alternate forum be
one ‘in which the claim or action may be tried.’” Id. (citing Tex. Civ. Prac. & Rem.
Code Ann. § 71.051(b)(1)). However, the reasoning of the supreme court in In re
General Electric does not compel the conclusion that a forum is inadequate simply
because it does not guarantee a plaintiff the right to a jury trial, even if that plaintiff
is an American citizen. Rather, the right to a jury trial is one of several factors that
may be considered by a court in determining the adequacy of an alternate forum. 
Additionally, other persuasive authorities indicate that the lack of the right to a jury
trial does not, by itself, necessitate a finding that an alternative forum is inadequate. 
See Zermeno v. McDonnell Douglas Corp., 246 F. Supp. 2d 646, 659 (S.D. Tex.
2003) (“Neither discovery limitations nor the lack of a jury trial in a foreign forum
makes that forum inadequate.”); Tjontveit v. Den Norske Bank ASA, 997 F. Supp. 799,
807 (S.D. Tex. 1998) (lack of jury trial does not render remedy inadequate); see also
14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal
Practice & Procedure § 3828.3, at 689 (3d ed. 2009) (stating that bar for
establishing that alternative forum is adequate “historically has been quite low” and
that “absence of the right to a jury trial . . . normally will not prevent dismissal”).
Private and Public Interest Factors
          We next consider the balance of the relevant private and public interest factors. 
See Tex. Civ. Prac. & Rem. Code Ann. § 71.051(b)(5). The private interest factors
that are to be generally considered are the ease of access to proof, the availability of
compulsory process for the attendance of unwilling witnesses, the cost of obtaining
willing witnesses, the possibility of viewing the premises, and other practical
problems that make a trial easy, expeditious, and inexpensive. In re Gen. Elec. Co.,
271 S.W.3d at 691 (citing Gulf Oil, 330 U.S. at 508, 67 S. Ct. 839); In re Omega
Protein, Inc., 288 S.W.3d 17, 20 (Tex. App.—Houston [1st Dist.] 2009, orig.
proceeding). Generally, the public interest factors to be considered are the
administrative difficulties related to court congestion, burdening the people of a
community with jury duty when they have no relation to the litigation, local interest
in having localized controversies decided at home, and trying a case in the forum that
is at home with the law that governs the case. In re Gen. Elec. Co., 271 S.W.3d at
691 (citing Gulf Oil, 330 U.S. at 508–09, 67 S. Ct. 839); In re Omega Protein, Inc.,
288 S.W.3d at 21. 
          NOV asserts that “for most of the relevant evidence of liability and damages
in this case, Singapore is the forum with the most ease in access of proof,” the
evidence regarding the derrick failure and the derrick repairs are located in Singapore,
and “Texas has no means of ready access to those sources of proof.” NOV does not
provide citations to the record to support these assertions, and these assertions are not
borne out by the record before us. 
          Kucharski, GlobalSantaFe’s director of the DDI, testified that the files and
documents relating to the DDI, the collapse of the derrick, and the subsequent
investigation are located partly at GlobalSantaFe’s building on Memorial Drive in
Houston and partly at a storage facility “somewhere” in the United States. Kucharski
also stated that the documents are under GlobalSantaFe’s control and accessible in
Houston. In fact, Kucharski disagreed with the assertion that “almost all of the
evidence or sources of proof relating to the construction of the DDI and the
investigation following the failure” of the derrick are located in Singapore. When
asked whether a person who visited the Singapore shipyard where the DDI was
constructed would see any evidence of the DDI, Kucharski responded, “Hopefully
not.” It is undisputed that in 2005, following the accident and repairs, the DDI sailed
to the Gulf of Mexico.
          Kucharski further testified that he knew of no remaining physical evidence
located in Singapore, but NOV stresses that Kucharski also confirmed that none of
the physical evidence related to the derrick collapse was brought back to Houston. 
Specifically, when asked if any evidence was salvaged and kept in Singapore,
Kucharski stated that he “believe[d] some of it was,” and he stated that NOV had
taken some of the equipment to a facility in Singapore. However, he conceded that
he did not know if any such evidence still existed and he had “no idea” where any
pieces of the derrick were actually located. Although he admitted that NOV had
become the owner of the property, NOV did not present any evidence, nor did it even
specifically assert, that salvaged pieces of the derrick still existed and, if so, that they
remain in Singapore.


 
          Vinson concedes that his original medical records from his emergency room
visit following the incident are located in Singapore. However, those records total
five pages, copies have been produced to appellees in this case, and they are in the
record before us. Vinson also cites to evidence in the record showing that, after the
incident, GlobalSantaFe arranged for Vinson to come to Houston to receive medical
treatment from GlobalSantaFe’s company doctor and to be seen at a pain care center
in Houston. Vinson notes that his medical records, other than his minimal records
from the emergency room visit, are located in Alabama and Texas, not Singapore. 
          In regard to the location of witnesses, NOV refers to Vinson’s deposition as
proof that “almost all of the witnesses that Vinson considered relevant [are] in
Singapore.” As stated above, Vinson’s deposition does not appear in the record
before us, so we cannot consider these references on appeal. NOV also cites
Kucharski’s deposition in support of its argument that the location of witnesses favors
Singapore. First, NOV notes that Kucharski testified that the witnesses to the
incident were in Singapore “at the time” of the accident. But, NOV does not cite to
any evidence that the witnesses in the shipyard at the time of the incident who would
also likely be trial witnesses are still located in Singapore. Our inquiry focuses on the
parties’ ability to obtain evidence and testimony from potential witnesses with
knowledge relevant to Vinson’s claims. See Van Cauwenberghe v. Biard, 486 U.S.
517, 528, 108 S. Ct. 1945, 1953 (1988). We do not focus on the physical location of
the witnesses at the time of the incident. 
          NOV also refers us to a chart that it created of “every witness mentioned” by
Kucharski in his deposition. In its chart, NOV separates those witnesses who live in
Houston from those who do not. NOV asserts that its chart displays that “most of the
potential witnesses do not reside in Houston and are outside the subpoena range of
a Harris County district court,” but NOV does not identify any unwilling, non-party
witnesses in its briefing. We note that to the extent NOV’s chart includes unwilling,
non-party witnesses, many of the witnesses identified as being outside of the
subpoena range of a Harris County district court would also be outside the subpoena
range of a Singapore court. Additionally, NOV, in its chart, does not indicate why
many of the alleged “potential witnesses” would even be called to provide testimony
at trial. See Van Cauwenberghe, 486 U.S. 517, 528, 108 S. Ct. 1945, 1953 (stating
that to examine relative ease of access to sources of proof and availability of
witnesses, court must scrutinize substance of dispute to evaluate proof required and
to determine whether “pieces of evidence cited by the parties are critical, or even
relevant, to the plaintiff’s cause of action and to any potential defenses to the
action”). NOV’s implied assertion that all of the witnesses identified in its chart
would need to be deposed or called at trial to offer testimony relevant to Vinson’s
claims is contradicted by Kucharski’s testimony. 
          Kucharski, who works for GlobalSantaFe at its corporate headquarters in
Houston and who lives in Cypress, Texas, testified that he worked from Houston as
the program director involved in building the DDI at the time of the incident. 
Kurcharski traveled from Houston to Singapore approximately one week per month
during the building of the DDI, and he was at the shipyard at the time the derrick
collapsed. Kucharski confirmed that he would be the “most knowledgeable” person
regarding the “construction, collapse, and repair of the DDI.” During this time,
Kucharski reported to Pharr Smith, who also worked at GlobalSantaFe in Houston
and who continued to live in Houston at the time of Kucharski’s deposition. During
the building of the DDI, Kucharski supervised a small team of technical advisers
located in Houston as well as a construction team that worked in Singapore. 
Kurcharski explained that all the GlobalSantaFe personnel involved in the DDI
project had since left GlobalSantaFe, except for he and Smith. He stated that the
project manager lived in the United Kingdom, two of the discipline engineers lived
in Singapore, the operations manager lived in Australia, and the rig manager lived in
Alabama. Nevertheless, Kucharski reiterated that he was the person most
knowledgeable on the relevant matters.
          Kucharski further testified that, following the derrick collapse, he hired DNV
Houston to investigate the cause of the collapse and conduct a root cause analysis. 
Charles McCardy, Kurcharski’s primary contact at DNV Houston, and Richard
Helmersson, who conducted the root cause analysis for DNV Houston, were both
located in Houston at the time of the investigation. Kucharski believed that both men
remained in Houston at the time of his deposition. Kurcharski identified another
DNV consultant, Norman Dyer, who was located in Houston at the time of the
incident and who had verified the DNV report.


 Kucharski further stated that, in
addition to the report and root cause analysis prepared by DNV, he also hired DNV
to do a “total independent design verification of the derrick.” This involved a totally
different department and different DNV group of people also located in Houston.
Vinson notes that all of these Houston based witnesses are critical to his claims, are
within subpoena range of the trial court to the extent they are unwilling witness, are
“easily available” in Houston, and the cost of their attendance at a Harris County
District Court would be modest. Vinson also notes that the medical providers he saw
through GlobalSantaFe are located in Houston.



          In regard to the personnel from the shipyard identified by NOV, Kucharski
testified that because these persons were not directly involved in the design,
engineering, or fabrication of the derrick, “there was no relevance” in discussing
those issues with those shipyard personnel. Kucharski agreed that there is no one in
Singapore employed by the shipyard company that has any relevant knowledge of the
collapse, and DNV did not even interview any shipyard personnel in conducting its
investigation. Kucharski conceded that he knew of no persons in Singapore who
were involved in the design or fabrication of the derrick. He also disagreed with the
assertion that “almost all of the witnesses with knowledge about the DDI, its
construction, [and] the derrick failure” are located in Singapore. When asked if there
is any evidence from the investigation that the condition of the barge or the rigging
in the shipyard had anything to do with the incident, Kucharski replied, “[a]bsolutely
not.”
          NOV asserts that it was “not required to identify specific witnesses or
evidence” that it would be unable to obtain in a Texas forum in order for the case to
be dismissed to a Singapore forum. In In re General Electric, the supreme court
stated that “detail regarding which witnesses would be called and what evidence
would be unavailable is not necessary in a case such as this where the practical
problems of trying a personal injury case hundreds of miles from the scene of the
occurrence, the place where the lay witnesses reside, and where most other evidence
is located is manifest.” 271 S.W.3d at 691. But, In re General Electric involved a
lawsuit brought by a life-long Maine resident who claimed injury resulting from
asbestos exposure while working at a job site in Maine for over a thirty year period;
the defendants in that case sought a dismissal to Maine. Id. Moreover, the plaintiff’s
treating physicians, co-worker witnesses, and family members all resided in Maine. 
Id. Faced with these facts, the supreme court determined that the case had “no
relationship to Texas” and that evidentiary and practical problems with a Texas forum
were manifest. Id. The alleged practical problems of Texas as a forum for this case,
unlike those referred to in In re General Electric, are not manifest. In fact, the record
directly contradicts NOV’s assertion that a Texas forum would hinder the
“fundamental need” of reasonable access to witnesses and evidence.
          NOV further argues that “Texas cannot compel the attendance here of
unwilling witnesses, and because the cost of attendance here of willing witnesses is
prohibitive, this factor also weighs heavily in favor of Singapore as the proper
forum.” However, NOV has not identified or provided any evidence regarding the
relevant testimony to be provided by any non-party unwilling witnesses, and NOV
does not explain how the cost of attendance of willing, party witnesses is
“prohibitive.” The record before us reveals that the most relevant witnesses,
including Vinson, Kucharski, and DNV Houston personnel, reside in Houston or in
the United States. See Signature Mgmt. Team, LLC, 281 S.W.3d at 673 (noting that
movant failed to identify “unwilling witnesses who are beyond the subpoena power”
and also failed to “introduce any evidence attempting to quantify the additional
witness expense that a Texas forum would entail”); In re Williams Gas Processing
Co., No. 14-07-01026-CV, 2008 WL 257275, at *2 (Tex. App.—Houston [14th Dist.]
Jan. 31, 2008, orig. proceeding, mand. denied) (mem. op.) (noting that movant’s proof
did not address whether witnesses would testify voluntarily, whether it would be
burdensome for any witness to travel to Texas, costs associated with obtaining
witnesses’ in Texas, or any difficulty in accessing proof in Texas). The record also
reveals that witnesses employed by appellees, at least at GlobalSantaFe, frequently
traveled back and forth between Texas and Singapore. 
          In regard to a view of the premises, it is undisputed that the DDI, the location
of Vinson’s injury, sailed in March 2005 from Singapore to the Gulf of Mexico,
where it currently remains. Vinson and appellees agree that a view of the DDI is
likely unnecessary in this case, and the record before us indicates that the most
relevant evidence concerning the cause of the derrick collapse will likely be provided
by Kucharksi and DNV Houston personnel.


 However, Vinson asserts that, if a view
of the DDI ultimately proves to be helpful, it could be done more easily from Houston
than from Singapore. 
          Finally, in regard to all other alleged practical problems, NOV cites evidence
showing that Singapore uses the English language, which would preclude any
translation problems. Other than this one argument, NOV again generally asserts that
“witnesses and sources of proof are not in Texas” and “most witnesses and proof are
in Singapore.” Again, the record before us simply does not support these assertions. 
          In sum, Kucharski’s deposition testimony and other evidence in the record
establish that most of the relevant documents and witnesses in this lawsuit are located
in Houston and the United States and that many of the critical witnesses, including
Kucharski and DNV personnel, are located in Houston. It is also undisputed that
Vinson is a United States citizen residing in Alabama, he was hired by a company
with a Houston headquarters to work on the DDI in Singapore, and Vinson worked
on a project being supervised by a person located in Houston. The record indicates
that Vinson received at least some medical treatment in Houston, and the only
evidence in the record regarding his medical treatment in Singapore shows that he
was initially seen in a Singapore emergency room. Kucharski also provided
undisputed testimony that personnel from the Singapore shipyard have no knowledge
of the relevant facts pertaining to the derrick’s collapse, which is the alleged cause
of Vinson’s injuries and the basis for Vinson’s claims against appellees. The record
also shows, and the parties agree, that there would be no need for the fact finder to
view the Singapore shipyard and that the DDI itself sailed to the Gulf of Mexico after
the incident. Accordingly, we conclude that the private interest factors weigh heavily
in favor of the Texas forum.
          In regard to the public interest factors, there is no evidence in the record
regarding any administrative difficulties related to court congestion. In regard to
local interest, NOV asserts that “Texas has no local interest in a personal injury suit
brought by a resident of Alabama for injuries that occurred in Singapore” and that
Singapore “has great interest in determining the liability of defendants for allegedly
causing injuries in Singapore.” Vinson counters that this dispute involves a suit
brought by a United States citizen against three defendants that maintain their
corporate headquarters in Houston, along with one Dutch company, for injuries that
he sustained on a vessel that is currently located in the Gulf of Mexico. Vinson notes
that there is “no allegation that any Singapore citizen or entity was negligent or
responsible in any way” for Vinson’s injuries.
          The issue of which forum can claim to have a local interest in this case presents
an interesting question that is unique from the authorities cited by the parties in their
briefing. For example, in In re General Electric Co., the supreme court determined
that the private and public interest factors weighed in favor a Maine forum, but that
case involved a plaintiff who was a life-long resident of Maine who sustained
asbestos-related injuries at a jobsite in Maine, almost all of the evidence and
witnesses were located in Maine, and it was undisputed that Maine law applied. 271
S.W.3d at 684. The court explained that Maine “undoubtedly [had] an interest in
ensuring that its citizens [were] not exposed to hazardous materials” in a Maine
workplace. Id. at 691. 
          In In re Omega Protein, Inc., this Court considered a suit brought by a Virginia
resident injured while working on a vessel that operated exclusively out of Virginia
with a crew based in Virginia. 288 S.W.3d at 22–23. Moreover, the evidence
presented in that case showed that all persons responsible for the manning, operation,
and maintenance of the vessel were based in Virginia and the persons with the most
knowledge of safety policies and procedures were based in Virginia. Id. We
concluded that the suit had “no meaningful connection to Harris County or Texas”
and that the case belonged in Virginia. Id. 
          In contrast, here, we are presented with claims brought by Vinson, a United
States citizen and an Alabama resident, who was hired by GlobalSantaFe, a company
with its corporate headquarters in Houston, to travel to Singapore and work on a
vessel that is now located in the Gulf of Mexico. Vinson is also seeking recovery
against NOV and ABS, corporations who similarly maintain their headquarters in
Houston.


 Additionally, Vinson received medical treatment in Houston, and
evidence in the record shows that GlobalSantaFe, Vinson’s Houston-based employer,
was at least involved in arranging some of his treatment. Under the trial court’s
order, Vinson is now faced with the dismissal of his personal injury lawsuit to a
foreign forum approximately ten thousand miles away, not simply another forum in
the United States, like the alternative forums in In re General Electric and In re
Omega Protein. And, although the loss of certain rights does not necessarily render
an alternative forum to be inadequate, our supreme court has considered the
availability of a jury trial and other rights generally afforded to plaintiffs who are
United States citizens in conducting a forum non conveniens analysis. See In re Gen.
Elec. Co., 271 S.W.3d at 692 (stating, in regard to alternative forum of Maine, that
Maine state courts and the potential federal court forum “are subject to the federal
Constitution and the rights it guarantees”).


 
           Finally, in regard to choice of law, the parties primarily focus on whether
Vinson is entitled to seek relief under the Jones Act. See 46 U.S.C.A. § 30104. NOV
appears to agree that Vinson could have viable claims under the Jones Act, even
though he was injured aboard a rig located in a Singapore shipyard, but for the fact
that the rig was under construction and NOV, thus, contends that it was not a “vessel
in navigation.” NOV asserts that the trial court was required to consider the
applicability of the Jones Act in conducting the forum non conveniens analysis
because, if the Jones Act applied, the choice of law factor would either favor or
mandate an American forum. See Loya v. Starwood Hotels & Resorts Worldwide,
Inc., 583 F.3d 656, 662 (9th Cir. 2009) (recognizing that applicability of Jones Act
would foreclose dismissal as to American citizen for forum non conveniens based
upon specific venue provision in Jones Act). 
          The trial court concluded that Vinson did not qualify as a Jones Act seaman
because he was not aboard a “vessel in navigation.” We agree that, in conducting the
forum non conveniens analysis, the trial court was entitled to consider the
applicability of the Jones Act. See id. The extremely limited record before us
regarding the Jones Act issue indicates that the DDI was still undergoing construction
in the Singapore shipyard at the time of Vinson’s injuries and, under recent Fifth
Circuit precedent, the DDI may not qualify as a vessel in navigation. See Cain v.
Transocean Offshore USA, Inc., 518 F.3d 295, 298–99 (5th Cir. 2008). Although the
applicability of the Jones Act may be an open question subject to additional discovery
and argument upon remand, we conclude that the trial court’s finding that the Jones
Act did not apply, which it made in conjunction with its forum non conveniens
analysis, is supported by the existing record.



          However, even though the trial court’s conclusion regarding the Jones Act is
supported by the existing record, the trial court’s conclusions that Singapore law
would apply and that it would have to “untangle problems in conflict of laws”
between Texas and Singapore lacks support in the record. Generally a court must
first identify a conflict of law which would necessitate that the trial court decide a
choice of law issue. See Ford Motor Co. v. Aguiniga, 9 S.W.3d 252, 260 (Tex.
App.—San Antonio 1999, pet. denied). Here, there is no evidence of a conflict of
law between the forums on Vinson’s general negligence claims. In fact, in its
briefing, NOV argues that Vinson would “experience little difficulty in trying his case
under Singapore law” because its legal system is modeled upon the English common
law. Additionally, even if the trial court would be required to perform a choice of law
analysis,


 we conclude that the requisite test points toward to the application of
Texas law, or least that a choice of law question would present a close call.


 To the
extent that there is a conflict and a choice of law question that needs to be untangled,
either forum, Texas or Singapore, would likely have to undertake such an analysis. 
          NOV argues that it would be unfair to burden Texas citizens with jury duty
because Texas has no significant connection to Vinson’s claims. However, Vinson’s
employer is headquartered in Texas, Vinson received medical treatment in Texas,
Vinson’s employer conducted and supervised the DDI building program from Texas,
the investigation of the derrick collapse was conducted by DNV Houston, and many
of the critical witnesses and documents are located in Texas. Additionally, although
Vinson is an Alabama resident, he is a United States citizen suing for injuries he
sustained while working for a company headquartered in Houston. In sum, we
conclude that the public interest factors weigh heavily in favor of a Texas forum. 
Remaining Considerations
          The record does support a finding that because appellees have consented to
jurisdiction in Singapore, dismissal of the suit would not result in unreasonable
duplication of litigation. See Tex. Civ. Prac. & Rem. Code Ann. § 71.051(b)(6). 
 However, the record does not demonstrate that appellees would suffer substantial
injustice as a result of the trial of Vinson’s claims in Texas. See Tex. Civ. Prac. &
Rem. Code Ann. § 71.051(b)(3). Critical witnesses and documents are located in
Texas, even if some witnesses are in Singapore. In fact, as noted above, the evidence
in the record shows that NOV and GlobalSantaFe have already settled any claims
between them arising from the derrick collapse in their Houston offices. Thus, we
conclude that the remaining considerations favor a Texas forum. 
          In sum, having concluded that the public and private interest factors weigh
strongly in favor of the Texas forum and that the remaining considerations largely
favor a Texas forum, we hold that the trial court abused its discretion in granting
appellees’ motion to dismiss under the doctrine of forum non conveniens.


 
          We sustain Vinson’s second issue.
Conclusion
          We reverse the order of the trial court dismissing Vinson’s lawsuit under the
doctrine of forum non conveniens and remand the case for further proceedings
consistent with our opinion.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Jennings, Higley, and Sharp.